RECEIVED

MAR 2 0 2020

Page 4

U.S. C.A. 3rd CIR

PAE AO 241
(Rev. 05/2018)

# PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS
## BY A PERSON IN STATE CUSTODY

| United States District Court | District: Eastern District of Pennsylvania |
|---|---|
| Name (under which you were convicted): Amin H. Gibbs | Docket or Case No.: CP-51-CR-0004779-2013 CP-51-CR-0004781-2013 |
| Place of Confinement: SCI-Pine Grove | Prisoner No.: DD7148 |
| Petitioner (Include the name under which you were convicted): Amin Gibbs | Respondent (Name of Warden, Superintendent, Jailor, or authorized person having custody of petitioner): Superintendent Lee Estock |

V.

The District Attorney of the County of: PHILADELPHIA

and

The Attorney General of the State of: Pennsylvania

## PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:
   The Philadelphia Court of Common Pleas

   (b) Criminal docket or case number (if you know): CP-51-CR-0004779-2013; CP-51-CR-0004781-201?

2. (a) Date of judgment of conviction (if you know): 12-11-14

   (b) Date of sentencing: 4-8-2015

3. Length of sentence: 17½ - 35 yrs.

4. In this case, were you convicted on more than one count or of more than one crime? ☑ Yes   ☐ No

5. Identify all crimes of which you were convicted and sentenced in this case: possession firearm prohibited, carrying firearm public street of Phila., Aggravated assault.

PAE AO 241
(Rev. 05/2018)

6.     (a) What was your plea? (Check one)

      ☑ (1)    Not Guilty        ☐ (3)    Nolo contendere (no contest)

      ☐ (2)    Guilty             ☐ (4)    Insanity plea

      (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? _____

_____

_____

_____

_____

      (c) If you went to trial, what kind of trial did you have? (Check one)

      ☑ Jury        ☐ Judge only

7.     Did you testify at a pretrial hearing, trial, or a post-trial hearing?

      ☐ Yes        ☑ No

8.     Did you appeal from the judgment of conviction?

      ☑ Yes        ☐ No

9.     If you did appeal, answer the following:

      (a) Name of court: _Superior Court Eastern District_

      (b) Docket or case number (if you know): _No. 1711 EDA 2016_

      (c) Result: _Denied Judgment of Sentence, affirmed Copposition Anders brief)_

      (d) Date of result (if you know): _March 28, 2018_

      (e) Citation to the case (if you know): _NON-PRECEDENTIAL DECISION - Super. Ct. I.O.P. 65.37_

      (f) Grounds raised: _cross-examination; Suppression of Evid.; self-representation Brady violation; Stipulation; per Anders brief_

_____

_____

_____

_____

_____

      (g) Did you seek further review by a higher state court?

      ☑ Yes        ☐ No

PAE AO 241
(Rev. 05/2018)

Page 6

If yes, answer the following:

(1) Name of court: Pa. Supreme Court

(2) Docket or case number (if you know): did not assign one

(3) Result: Would not appeal because both the Super. Ct. & PCRA ct. did not finalize orders.

(4) Date of result (if you know): 2-19-20

(5) Citation to the case (if you know): _____

(6) Grounds raised: Petition for Allowance to Appeal

_____

_____

_____

_____

(h) Did you file a petition for certiorari in the United States Supreme Court?

☐ Yes    ☑ No

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

(i) Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?

☑ Yes    ☐ No

10. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: Super. Ct. Eastern Dist. a second time after PCRA Dismissal

(2) Docket or case number (if you know): 3427 & 3426 EDA 2019

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: Appeal opposition of PCRA Ct. dismissal by Ineffectiveness

(5) Grounds raised: PCRA Ct. erred & abused discretion by failing to list reasons for PCRA Petition; 6th amend. right to cross-examine; Habeas corpus state Writ ignored; Prior bad act evid.; prosecutorial vindictiveness; Suppression; perjury; forgery; Personal animosity; self-representation; Disposition of Appeal; After-discovered evid.; Brady violation

_____

_____

_____

PAE AO 241
(Rev. 05/2018)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☑ No

(7) Result: _dismissed_

(8) Date of result (if you know): _11-12-19  See Order (exhibit D)_

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☑ No

(7) Result: _____

(8) Date of result (if you know): _____

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes        ☐ No

(7) Result: _____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion:

(1) First petition:     ☑ Yes        ☐ No

(2) Second petition:   ☐ Yes        ☐ No

(3) Third petition:    ☐ Yes        ☐ No

*App. for relief filed 1/11/20 to Super. Ct. Denied either Jan. or Feb. 2020*

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

The Pa. S. Ct. of appeal(s) because the P.C.R.A. Ct & Super. Ct. would not state Opinion or finalize judgment pursuant to Pa.R.A.P. 341(a) will not entertain Appellants appeal. See exhibit S. Ct. of Pa. letter.

11. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

GROUND ONE: Trial Counsel failed in objection to issues except cross-exam. cross-examination; self-representation; right to Writ; post-sentence/appellate rights; search & seizure; Pa.R.Crim.P. 704

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Petitioner did not cross-examine cellphone civilian witnesses or T-Mobile official said to compiled the data nor a det. who participated in the search for the phone who initiated the search & seizure; Writ was ignored; Post-sentence & appellate rights were not given Appellants; Suppression of Physical Evid. erroneously denied Appellant; Trial Ct. abused discretion/was bias & helped the Com. with it's case against Appellant; Prior bad act evid. used; Com. vindictively prosecuted appellant; perjury was committed by both the Com. & her witnesses; evid. was forged; personal animosity by trial counsel; erroneously denied self-representation; Disposition of appeal not fulfilled; after-discovered evid. ignored; brady violations occurred during trial & was brought to trial ct.'s attention. No physical evid. humanly, scientifically nor mathematically points to appellant. The evid. does not say what it is supposed to say against appellant. The conclusion is rushed judgment & there is reasonable doubt.

(b) If you did not exhaust your state remedies on Ground One, explain why: _The State Cts refuse to answer appeal & petition & erroneous denied direct appeal, & Appeal counsel ineffectively failed to raise claims in direct appeal that were valid which would have led to PCRA & so, while he did not exhaust all of his state remedies as to ground one, he may file this habeas corpus petition under exception of Martinez v. Ryan, 566 vs 1 (2012)_

(c) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☑ Yes   ☑ No

(2) If you did not raise this issue in your direct appeal, explain why? _Pa. does not provide for Challenges to the ineffectiveness on direct appeal. Against trial Counsel_

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes   ☐ No

(2) If your answer to Question (d)(1) is "Yes," state: _opposition Anders Brief to Appeal Counsel's Anders Brief; to trial Ct. about trial Counsel &_

Type of motion or petition: _POST CONVICTION RELIEF ACT_

Name and location of the court where the motion or petition was filed: _Philadelphia County Trial Division Criminal Section_

Docket or case number (if you know): _CP-51-CR-0004779-2013; CP-51-CR-0004781-2013_

Date of the court's decision: _11-12-19 See exhibit D_

Result (attach a copy of the court's opinion or order, if available): _dismissed without opinion; Habeas Corpus filed 3-9-15 & ignored._

(3) Did you receive a hearing on your motion or petition?   ☐ Yes   ☑ No

(4) Did you appeal from the denial of your motion or petition?   ☑ Yes   ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☑ Yes   ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _Superior Court/Eastern Dist._

Docket or case number (if you know): _3426 & 3427 EDA 2019_

Date of the court's decision: _January 16, 2020_

PAE AO 241
(Rev. 07/10)

Result (attach a copy of the court's opinion or order, if available): _Quashed_
_Exhibit D_

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this
issue: _Quashal not raised because S.Ct. of Pa. will not entertain_
_it & Super. Ct. refuses to not quash. All appointed counsels would not_
_raise appellant's issues & so, appellant filed pro se representation & was_
_allowed 6-8-18 by Grazier hearing. Trial counsel refused submission of_
_proper post-sentence motions & Appeal counsel refused to go forward & put ineffect-_
_iveness on himself bringing appellants claim within the exception to requireme-_
_of exhaustion established in Martinez v. Ryan, 566 US 1 (2012)._

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies,
etc.) that you have used to exhaust your state remedies on Ground One: _State Habeas_
_Corpus; Insufficient Evid. Motion; New Trial.motion, Direct_
_appeal, PCRA, back to the Super. Ct. a second time, & lastly, S.Ct. of Pa._
_that will not entertain an Appeal for/by Appellant._

**GROUND TWO:** _All_

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____

(c) Direct Appeal of Ground Two:

(1) If you appealed from the judgment of conviction, did you raise this issue?

☐ Yes   ☐ No

PAE AO 241
(Rev. 07/10)

(2)  If you did not raise this issue in your direct appeal, explain why? _____

_____

_____

**(d)  Post-Conviction Proceedings:**

(1)  Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes        ☐      No

(2)  If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

| | | | |
|---|---|---|---|
| (3)  Did you receive a hearing on your motion or petition? | ☐ Yes | ☐ No |
| (4)  Did you appeal from the denial of your motion or petition? | ☐ Yes | ☐ No |

(5)  If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☐ Yes      ☐ No

(6)  If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7)  If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

_____

_____

_____

PAE AO 241
(Rev. 07/10)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: _____

_____

_____

_____

**GROUND THREE:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

_____

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☐ Yes          ☐ No

(2) If you did not raise this issue in your direct appeal, explain why? _____

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes        ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

PAE AO 241
(Rev. 07/10)

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(3) Did you receive a hearing on your motion or petition?          ☐ Yes     ☐ No

(4) Did you appeal from the denial of your motion or petition?     ☐ Yes     ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

    ☐ Yes     ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this

issue: _____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: _____

_____

_____

**GROUND FOUR:** _____

(a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

PAE AO 241
(Rev. 07/10)

Page 14

\
(b)  If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

_____

(c)  **Direct Appeal of Ground Four:**

    (1)  If you appealed from the judgment of conviction, did you raise this issue?

        ☐ Yes    ☐ No

    (2)  If you did not raise this issue in your direct appeal, explain why? _____

        _____

        _____

(d)  **Post-Conviction Proceedings:**

    (1)  Did you raise this issue through a post-conviction motion or petition for habeas corpus in a
state trial court?

        ☐ Yes    ☐ No

    (2)  If your answer to Question (d)(1) is "Yes," state:

        Type of motion or petition: _____

        Name and location of the court where the motion or petition was filed: _____

        _____

        Docket or case number (if you know): _____

        Date of the court's decision: _____

        Result (attach a copy of the court's opinion or order, if available): _____

        _____

| | | | |
|---|---|---|---|
| (3)  Did you receive a hearing on your motion or petition? | ☐ Yes | ☐ No |
| (4)  Did you appeal from the denial of your motion or petition? | ☐ Yes | ☐ No |

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

    ☐ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: _____

_____

_____

_____

_____

_____

12. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?

    ☐ Yes    ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: _____

_____

_____

_____

PAE AO 241
(Rev. 07/10)

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

_____

_____

_____

13. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?

☐ Yes          ☐ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available. _____

_____

_____

_____

_____

_____

14. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?

☐ Yes          ☐ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised: _____

_____

_____

_____

15. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: Michael Medway _____

_____

(b) At arraignment and plea: _____

_____

PAE AO 241
(Rev. 07/10)

Page 17

(c) At trial: Michael Medway   3 Logan Square
1717 Street·Suite 3640 , Philadelphia, PA 19103
(d) At sentencing: Michael Medway   3 Logan Square
1717 Arch Street·Suite 3640, Philadelphia, PA 19103

(e) On appeal: Todd Mosser, ESQUIRE   211 N. 13th Street, Suite 801
Philadelphia, PA 19107

(f) In any post-conviction proceeding: Pro Se

(g) On appeal from any ruling against you in a post-conviction proceeding: Dismissed (see exhibit D)
11-12-19 ( PCRA from 2-22-17 ); State Habeas Corpus ignored
(Filed 3-9-15 ).

16. **Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?**

    ☐ Yes    ☑ No

  (a) If so, give the name and location of the court that imposed the other sentence you will serve in the future: _____

  (b) Give the date the other sentence was imposed: _____

  (c) Give the length of the other sentence: _____

  (d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?

    ☐ Yes    ☐ No

17. **TIMELINESS OF PETITION:** If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition*
After 4-8-15 sentence, Appellant was given Appellate counsel 4-10-15
after waiting denial November 2015 by operation of law from trial counsels 4-9-15
sufficiency of the Evid. motion; Appeal counsel then filed 2-5-16 PCRA ineffectiveness
on himself for not filing Appeal as requested by Petitioner; Appeal counsel then filed
Anders brief 3-5-17 & it was granted on 3-28-18 after which Petitioner responded on
5-12-17 & it was denied on March 28, 2018; Petitioners PCRA filed 2-2-17 but denied
11-12-19; Petitioner then filed to Super Ct. again on 12-5-19 & it was quashed on
then Petitioner filed with the S.Ct. of Pa. which denied 'nim appeal 2-12-20 because
the State ct.s refusal to finalize. The S.Ct. of Pa. over looked CP-51-CR-0004779-2013
& CP-51-CR-0004781-2013 numbers from trial mentioned. Thus, petition not barred.
Petitioner thought that after Appeal counsels entry 4-10-15 Appeal counsel was working on his
appeal but was not & ate up some of Petitioners time. For Filling See Appeal counsel

PAE AO 241
(Rev. 07/10)

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court. The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: *release from prison by vacatur, dismiss with prejudice*

or any other relief to which petitioner may be entitled.

_____
*Signature of Attorney (if any)*

## CROSS-EXAMINATION

I. Whether all of the lower Ct.s, Super., trial & PCRA erred in ignoring cross-exam. objection during trial violating U.S. Const. Amend. 6 ? Trial Counsel ineffective?

1. All of the lower said ct.s turned a blind eye to Petitioner's right to be confronted by accusers. See 12/3/14 t.t. pg.s 251-260. Objection sustained because Bruce Gibbs was not in his flesh during any proceedings, hearsay of the grossest kind, & cross-examination. See U.S. Const. Amend. 6; Pa.CS.A. § 2209 ("Dead Mans Statutes") Deceased not competent to testify; F.R.E. 801 hearsay; F.R.E. 103(a)(1)(2)(b)(c)(d)

Bruce Gibbs was the star witness & without him no testimony that agg. assault #86108 was provable.

12/4/14 t.t. pg.s 4-14 & 15-26(2-3) trial ct. after ejecting the admission of a unavailable declarant reallowed the same unavailable declarant, with another unavailable declarant named Mr. Joseph Sierra; & 12/5/14 t.t. pg.s 94-112 Mr. Bruce Gibbs again with other cellphone civilians by way of text messages to testify without being in their flesh. Bruce Gibbs testified from his grave & the other said cellphone witnesses testified from wherever else in the world they were, Bruce Gibbs is also known as Drizz.

See 12/1/14 t.t. pg. 13(14-21) where trial ct. duly notes, "rulings made cannot be changed." Yet she changes the evid. & rules for the D.A. & reallows a dead mans testimony after deciding that she could not allow him to testify.

Both trial ct. & D.A. understood rules governing cross-examination. See 12/2/14 t.t. pg.s 23-24 & 46-47.

The S. Ct. interpreted the confrontation Clause in the 6th Amend. of the U.S. Const. to prohibit the introduction of "testimonial" hearsay from an unavailable witness against a defendant in a criminal case unless defendant had an opportunity to confront & cross-examine the declarant, regardless of it's exception from the hearsay rule. Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354 (2004).

An accused enjoys the right to be confronted with the witnesses against him. Included within the ambit of testimonial statements are those made during police interrogations. Id., U.S. at -, 124 S.Ct. at -, 158 L.Ed. 2d at 193." Where testimonial statements are at issue, the only idicum of reliability sufficient to satisfy constitutional demands is the one the const. actually proscribes. Confrontation." Id., at -, 124 S.Ct. at 1374, 158 L.Ed. 2d at 203.

In Crawford v. Washington, the petitioner was tried for agg. assault & attempted murder. The state sought to introduce a recorded statement that petitioner's wife Sylvia made during police interrogation as evid. that the stabbing by petitioner on another man was not in self-defense. She did not testify at trial. Petitioner argued that admitting the evid. would violate his 6th amend. right to be confronted with the witnesses against him.

In the present case see also 12/4/14 t.t. pg.s 222-224 (2-5); 12/8/14 t.t. pg. s 83, 165-168, exhibits PC5, PC2, PC6; 12/8/14 t.t. pg.s 56 (20-25) - 60 (2-22). All at call-ins alleged were not validated by civilians who supposed to had made the calls about the shooting petitioner was said to have committed.

Rogue det. Nordo was not cross-examined. He was

2

mentioned as apart of the case. See 12/1/14 t.t. pg.s 24(13-25), 25(2-17) per.se pg.25(17). Det. Nordo participated in an illegal search & interviewed witness Mr. Buford. See exhibits sw & 12/3/14 t.t. pg.s 98-137. Det. Nordo initiated the probable cause on Petitioner. See 12/5/14 pg.53 testimony by P/o Krewer & his report (exhibit JK).

Trial counsel told trial Ct. that the evid. was not generated by T-Mobile. See 12/4/14 t.t. pg.s 7(18-25) & 8(2-10). Trial counsel knew that because we had in our possession exhibit FC, but he would not present it. Exhibit FC would have impeached 12/4/14 t.t. pg.s 21-25 where Det. Verrecchio took the stand & purported text's & location sites were compiled by Mr. Joseph Sierra from T-Mobile official sent to him.

Exhibit FC would have Shown that petitioner did not own that phone, that 6/26/10 the phone was Activated while petitioner was in States custody on parole violation backed by a picture with petitioner on a visit with his girlfriend, doing groups to be reparoled & not released until 2/27/12 See exhibits BR, PDC & Picture.

Petitioner was arrested 11/23/12 for an alleged agg. assault on a Mr. Devoune Handy & found guilty by way of cellphone triangulation.

However, petitioners presence at the said location proves impossible by the evid. presented.

He could not have Activated the cellphone because he was in states custody 6/26/10 (pg.2 of exhibit FC). The phone Also was not authenticated F.R.E. 901 & 902, & Exhibit FC impeaches all provided testimony by the State's witnesses claiming that T-Mobile is the undisputed source of

information. See 12/4/14 t.t. pg.s 21-25; 12/5/14 t.t. pg.s 197-200(2-3) & 112; 12/8/14 t.t. pg.s 9-11(2-17), 14-20 (2-18); 110(8-11).

Det. after det. & FBI Agent Shute all testified that the evid. presented was that of T-Mobile & trial counsel did not impeach them purposely with available evid. that would have ended petitioner's erroneous guilt right then & there. And still, there had been no cross-examination nor examination of anyone or any thing involving text messages & location sites. Trial counsel dropped the ball. Petitioner was thus, found guilty of agg. assault & §6103 by purported cell text messages & location sites.

It was done in violation of Rule 4. Arrest warrant or Summons on complaint. (b)(1)(A)(B); (3) Manner (A); & Rule 3. The Complaint.

Meaning that the actual warrant did not describe Petitioner nor offense charged with respect to VUFA; the warrant was not executed by arresting petitioner, but by arresting petitioner then getting the warrant after entering the thresh hold; & the complaint or written statement was not an essential fact constituting the offense charged §6108. That was not the charge under oath to the magistrate judge. Contraband & homicide was or parole violation. Nor was Agg. assault. See exhibits PC1, PC3, & SW & JK.

The only warrant approved for execution is the 950 pm warrant 11/23/12. Trial judge therefore, upheld an invalid warrant to search after an illegal entry was made. Petitioner was in custody 715 pm 11/23/12 (See exhibit PC1) paragraphs 3 & 4 & exhibit SW & JK. How does one commit a crime while in custody? How does one activate a cellphone while in custody?

4

The Super. Ct. sought to waive petitioner's issues but was erroneous in doing so, because during trial petitioner's counsel addressed cross-examination issue.

Also F.R.E. 602. Lack of personal knowledge A witness may not testify to a matter unless evid. is introduced sufficient to support a finding that the witness has personal knowledge of the matter.

See in addition, Fed. R.E. 603. Oath or Affirmation Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience & impress the witness' mind with the duty to do so.

See further Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed. 2d 705 (1967); Delaware v. Van Arsdal, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed. 2d 674 (1986). Before ct. of appelles such an exacting standard of review, it must first find a constitutional violation.

In the above mentioned case laws Chapman & Van Arsdal, it was designed that when dist. ct.s ruling violates a crim. defendant's 6th amend right to confrontation, reversal is required unless" the beneficiary of [the] constitutional error can prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."

See March, 28 2018 denial by Super. Ct. for cross-exam. issue. All testimonial hearsay was of the grossest kind, & it was believed by the jurors as to the text's & location sites, 911 call ins as truth & prejudiced petitioner. It cost 10-20 (Agg. assault) & §6108 (carry firearm public) 2½-5yrs.

Exhibit D was last order by PCRA.

5

## Suppression of Physical Evid.

I. Whether a gun seized during a search, should have been suppressed warranted under 4th Amend. because affidavit did not provide substantial basis on which the magistrate could find probable cause to believe evid. of UFA would be found in the residence where appellate was arrested?

II. Was trial counsel ineffective for refusal to litigate suppression issue?

1. Exhibit SW (search warrant) does not describe person (Petitioner) & things to be seized (VUFA), nor with particularity describe places to search, was overbroad in stating "& any other items deemed to be of evidentiary value" in the warrant to search, causing exploratory searching.

Appellant-petitioner was arrested 11/23/12. Exhibits PC1 & PC3 are in reference to parole violation & homicide, not VUFA. Ordinarily, for a seizure to be reasonable under either constitutions but per se the U.S. Const. Amend. 4, it must be effectuated with a warrant based on probable cause. A magistrate may find probable cause for the issuance of a search warrant if considering the totality of the circumstances, their is a fair probability that contraband or evid. of a crime will be found in a particular place.

The magistrate's determination that probable cause existed is to be paid great deference. Accordingly, a reviewing Ct. must examine only that the magistrate had a "substantial basis for concluding that the probable cause existed to uphold the warrant. In making this determination the reviewing Ct. may consider other info. from other portions of the record. The affidavit must be read in its entirety & in a common sense & nontechnical manner. Meanwhile, the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded to warrants. This, however, does not mean the reviewing courts should simply rubber stamp a magistrates conclusions. The defendant bears the burden of establishing

that his 4th Amend. rights were violated.

See Exhibit JK & compare it to exhibits SW, PC1 & PC3. Nothing before, search warrant or during time of arrest is established as VUFA in connection with the application for the search warrant for 6724 Woodland Ave. The language specifies firearms or guns, ammunition, clothes type, ballistic evid.; proof of ownership/registration of vehicles; proof of residency & occupation.

The affidavits or warrant did not establish probable cause to believe that evid: of a VUFA 18 Pa.Cons.Stat. § 6105 would be found in the residence, because the affidavit failed to establish that petitioner constructively possessed a .22 caliber revolver referred to in the warrant or affidavit, & that it was illegal under the UFA.

As a general matter the violation listed on the face of a warrant limits the warrants scope. See U.S. V. Tracey, 597 F.3d 140, 152 n.10 (3d Cir. 2010) ("[T]he description [of items seized]...is limited by the language indicating that the officers were seeking permission to search & seize evid. of violations of a specific statutes subsections.")

Compare in this present case U.S. V. Jones, 818 F.Supp. 2d 845 (2011) 3d Cir. to the present case (petitioner).

Defendants motion to suppress was granted. Opinion by John R. Padova.

## II Trial counsels ineffectiveness

In the present case, trial counsel was ineffective for refusing to fight the issue at hand. See exhibits mm2 pg. 2 & mm3. Trial counsel turned a blind eye to (1) the magistrate issued a warrant in reliance on a deliberate or recklessly false affidavit; (2) the magistrate abandoned his judicial role &

to perform his neutral & detached function; (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existance entirely unreasonable; (4) the warrant was so facially deficient, it failed particularize the place to be searched or things to be seized; (5) the alleged tips were not validated against petitioner. See exhibits JK & 12/5/14 t.t. pg.s 26(16-25) - 31(2-21) & 33 (11-25). Report by P/o Krewer & testimony by det. Marano. Police corroboration of details of an informant's tip is an important method for establishing a tip's reliability. See HN11 of U.S. v. Jones.

Under the meaning of Strickland v. Washington, 466 U.S. 668, 694 104 S.Ct. 2052, 2068, 80 L.Ed. 2d 674 (864 F.2d 1020)(1984), trial counsel was ineffective in his counsel for petitioner & prejudiced him with 5-10 yrs.

Petitioner was not afforded right to counsel at all critical stages. Mempa v. Rhay, 389 U.S. 128, 134, 88 S.Ct. 254, 257 19 L.Ed. 2d 336 (1967); (it is a binding right & due process) Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799 (1963).

Petitioner's petition should be granted when compared to U.S. v. Jones & the ineffectiveness deliberately caused by trial counsel, concluding petitioners guilt in the exhibits before trial ct. did, causing him not to advocate.

In Jones see fN's 1-5. Ultimately, a defendant cannot be arrested for one thing, then charged for another thing because law enforcement rather seeks

8

a more trumped up charge/a harsher penalty there after.

1-5 FN's expresses that in a tip (3) no matter who gives one must be reliable & corroborated. And even though the exact gun was found (Tec-9), the gun needed to be linked to what was expressed in the affidavit or warrant which the police were there for. See

The affiant attempted, at some length, to implicate Jones for murder that the affidavit does not link in any way to the VFA at issue. Second, nothing in the case "suggest[s] that a hurried judgment had to be made to seek the warrant, excusing any reasonably mistake; indeed the police had complete control over the timing." (4)

And in (5) the physical evid. seized had omitted facts, that the Ct. of suppression found misleading.

In the present case, the Com. has never taken the position that the affidavit established probable cause to search Ms. Malones residence for evid. relating to VUFA; (2) the tips were not corroborated by any evid. in the case whatsoever; (3) the affidavits are in reference to parole violation & homicide & not VUFA or § 6105 as convicted of; & (4) the physical evid. seized was used in facts because the .22 caliber gun was used for agg. assault & § 6105 at trial after what the initial reasons read. Again "parole violation & homicide" & all the while still violating the 4th Amend. person & things seized & place(s) to be checked.

The charge meets dismissal because trial counsel avoided a good defense purposely due to his belief of proper execution towards suppression, & only fought the homicide charge during trial.

9

Petitioner was not afforded opportunity for full &
Fair opportunity upon exclusionary rule with respect to
seized evidence. See Stone v. Powell, 428 U.S. 465 (1976).
Neither on direct review. id. at 489. See also id. at 494-95.
See Wallace v. Kato, 549 U.S. 384 or 395 or n.5 (2007)
where it states that under Stone. 4th Amend. violation
is cognizable when State fails to provide habeas petitioner
\ an opportunity for full & fair litigation of 4th amend. claim.

See self-representation issue pg. no.1 & this suppression
issue where trial ct. does not let petitioner present his issues
to the ct. fully in 12/5/14 t.t. pg. s 151 (23-25) - 153 (1-15)
& trial counsel's refusal to present a defense for petitioner,

Had petitioner been allowed to pour forth all his
issues & trial counsel really put forth effort, then it
could be deemed that petitioner had a full & fair
opportunity to put this issue adequately on record, but
he did not, due to trial ct.s cutting him off & trial
counsels stubborn refusal to fight the case.

Again, relief/dismissal meets requirement.

374 Fed. Appx. 356 US v Reynolds Jun, 25,
2010 (Mistatements leads to suppression of evid.
if they were material to the finding of probable
cause); US V Brown, 3 F.3d 673, 678 n.6
(3d Cir. 1993).

Exhibit D was last order issued. PCRA

SELF-REPRESENTATION

I. Whether trial ct. erred by failing to let Petitioner represent himself at trial, & Super. ct. & P.C.R.A ct. for overlooking said issue under the 6th, 11th & 5th Amend's.?

II. Was trial counsel ineffective?

1. See 11/5/14 t.t. pg.s 151 (23-25) - 153 (1-15). Petitioner favorably addressed the ct. as to proceed pro se & announced irreconcilable differences with his ct. appointed atty. Petitioner expressed the stewardship & anger issues between him & counsel. Trial ct. observed the not getting along & the conflicted interests in her presence. Petitioner was cut off from adequately putting all his reasons on record. Petitioner thus forced to keep the trial counsel who he did not get along with.

Petitioner submitted motion for new counsel weeks in advance of trial but it was not listed filed until first day of trial 12/1/14. Petitioner filed again before sentencing 2/9/15 (sentencing 4-8-15) & still was refused self-representation.

See exhibit its Mo# 1.

In Faretta v. California, the S. Ct. held that an accused has a 6th Amend. right to conduct his own defense in a criminal case. 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed. 2d 562 (1975). Petitioner asserted this right in his motion pursuant to Pa.R.Crim.P. 121. Petitioner knowingly, intelligently & voluntarily waved his right to counsel in the motion. In the present case.

In Faretta Opinion by Mr. Justice Stewart stated; The right to counsel is of our Const. guarantee that a person brought to trial in any state or Fed. Ct. must be afforded the right to the assistance of counsel before he can be validly convicted & punished by imprisonment. The question before the S. Ct. was whether defendant (Faretta) in a state crim. trial had a constitutional right to proceed without counsel when he voluntarily & intelligently elects to do so. Put another way,

the question was addressed: whether a state may constitutionally hale a person into it's criminal ct.s & there force a lawyer upon him, even when he insists that he wants to conduct his own defense. It was thus concluded that a state may not do so.

Anthony Faretta was charged with Grand theft in an information filed in the Super. Ct. of Los Angeles County California. At the arraignment, the Super. Ct. Judge assigned to preside appointed the Public Defender to represent Faretta. Well before the date of trial, however, Faretta requested that he be permitted to represent himself. Questioning by the judge revealed that Faretta once represented himself in a crim. prosecution, that he had a high school education, & that he did not want to be represented by the Public Defender because of their being overloaded with cases.

The judge allowed in preliminary ruling that faretta could represent himself & later on in the case decided that he could not & appointed to Faretta a Public Defender.

At the conclusion of trial, Faretta was found guilty as charged, & the judge sentenced him to prison.

Comparing Faretta to the present case, Petitioner did have some education. See 12/1/14 t.t. pg. 8 (15-20). Petitioner denied trial counsel multiple times & that same counsel was forced upon petitioner but with irreconcilable differences announced, anger issues known to the judge which displayed the conflicted interests between petitioner & trial counsel; motions were filed against trial counsel.

Petitioner could not get pass the Common Pleas judge for counsel removal.

12

2. See 12/2/14 t.t. pg. s 5 (16-25) - 6 (2-22); 12/1/14 t.t. pg. s 3 (22-25) 4, 5 (2-6), 6 (6-25) & 7-8 (2-3). Petitioner repeatedly pursued to testify in his own defense. See also 12/1/14 t.t. pg. s 2-8 (2-12).

See exhibit mmb where trial counsel tried to both strategically & carefully scare petitioner into the deal by telling him "there was a slim chance of Petitioner winning, numbers are better than letters, & I should allow him to talk to the D.A. about the deal."

See 12/8/14 t.t. pg. s 160 (12-25) - 165 (2-20), 171(20-25) & 18 (2). Again appellant was asked to break his silence by testifying for himself/to take the stand.

The D.A. punished Appellant-petitioner for not going along with a deal or testifying. See 12/11/14 t.t. pg. 24 (19-25)

Prosecutorial vindictiveness may be found when the gov. penalizes a defendant for invoking legally protected rights. US v. Goodwin, 457 U.S. 368, 372 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982); U.S. v. Paramo, 998 F. 2d 1212, 1220 (3d. Cir. 1993) Meeting burden by either (1) using evid. of the prosecutor's retaliatory motive to prove vindictiveness, or (2) proving facts that in certain circumstances gives rise to do presumption of vindictiveness.

The 5th Amend. bars the prosecution from commenting directly, or indirectly on a defendants silence. Otherwise, defendant is penalized by the Ct. for exercising his const. right not to incriminate himself. A comment directed to a defendant's silence when the language was manifestly intended or was of such character that the jury would naturally & necessarily take it to be a comment in the failure of the accused to testify. 365 Fed. Appx. 379

U.S. V. Sylvester, Jan. 28, 2010.

In the present case see 12/2/14 t.t. pg. 16 (4-8). Once silence is addressed in the trial, before the trial, it does not have to be ejected to after it's forewarning of not taking the stand/silence. It has been held repeatedly, that the prosecutorial utilization of the defendant's silence is plain error. See 597 F.2d 350 U.S. v. Agee, Dec. 2, 1977 (3d Cir.); 1978 U.S. Appx. LEXIS 12506 U.S. V. Agee, Dec. 2, 1977.

In the present case, see 12/11/14 t.t. pg. 24 (19-23). In Closing Speech the prosecution because petitioner would not break his silence ignored the 5th Amend. & told the jury his prior by name, it prejudiced petitioner beyond fixing. In 5 minutes petitioner was found guilty in redeliberation when it took days for him to be acquitted of homicide. See exhibit CD

3. In Godinez v. Moran, 509 US 389, 125 L Ed 2d 321, 113 S. Ct. 2680 (1993) the S. Ct. reversed & remanded. Opinions by Thomas J., joined by Rehnquist, Ch. J., & White, O'connor, & Souter, JJ., & joined in part by Scalia & Kennedy, JJ.

See Vol. 1: Chapter 9 Plea Bargaining & Guilty Pleas, § 9.02 Validity of a Guilty Plea; Const. Principles 16 (A) overview.

A crim. defendant may not plead guilty or waive counsel unless she is mentally competent. The S. Ct. in Godinez v. Moran ruled that a competency standard for pleading guilty or for waiving counsel is the same as the standard for competency to stand trial.

In the present case, petitioner was deemed competent in one area & not competent in another

14

area & it rendered petitioner incompetent to stand trial. Petitioner could have pleaded guilty had he so desired, but could not conduct his own defense.

Petitioner was asked his age, about his education, medications, etc. Certain rights that would have been favored for the Com., petitioner was offered. To plead, to take the stand, but waiving counsel was denied without evaluation, self-representation also denied.

There is no rational & factual understanding of the proceeding to divide the S. Ct.s rulings prior, that you can plead guilty, not represent yourself (waive counsel) without evaluation, & still be competent to stand trial.

There would still be loss of due process 5th & 14th amend.s, & trial counsel is ineffective in his assistance under the meaning of Strickland for not protecting petitioner's rights to (1) resign (retire) due to conflict of interest; (2) to know that the competency standard was violated; (3) to know that slyly trying to get petitioner to plead guilty in his letter, to allow the Com. to punish him for not taking plea or taking the stand was tampering with petitioner's competency to stand trial & that it rendered him petitioner not competent to stand trial.

He should be found ineffective in his representation. Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 80 L. Ed. 2d 674 (1984).

Exhibit D last order issued.

## STIPULATION

I. Whether PCRA Ct.s dismissal & trial ct.s ignoring
Petitioners stipulation was erroneous, by the trial Ct.,
Com., & Petitioners own counsel mentioning his prior?
II Was trial counsel ineffective   violating 5th Amend.?

See in the present case 12/11/14 t.t. pg.s 9(23-25)-
11(2-22) During the trial, stipulation was offered by
petitioner, & trial counsel stated intentions to stipulation.
Petitioner & trial counsel decided together in private & in the
Ct. room openly that instead of reading what his prior was,
that stipulation would be not to read his prior, but only as one
not to possess a firearm.
    12/11/14 t.t. pg.s 16-17(2-15) the com. stated Appellant-
petitioners prior anyway no matter what & she & trial counsel
so stipulated. The trial Ct. allowed it.
    12/11/14 t.t. pg.s 18(21-25) 19(2-22) to prove or not
prove, & it is not known what trial counsel was doing or
ment by this, but he to stated petitioner's prior when
pretending to defend petitioner against the charge
after telling trial ct. not to present his prior. Erroneously
he & the com. so stipulated.
    Trial ct. & trial counsel again allowed the Com. to present
petitioner's prior by name again after the stipulation. See
12/11/14 t.t. pg.s 24(9-25), 25(2-19). Trial then herself
joined in on the prejudice & mentioned petitioners prior
by name (3rd degree murder). See 12/11/14 t.t. pg.s 27
(13-25)-28(2-22).
    To prove a §6105 charge one does not suffer undue
prejudice. See. Fed. R.E. 404
    In Old Chief, defendant-Appellant was charged
with assault & with possession of firearm prohibited

16

an individual who has been convicted of a crime
punishable by imprisonment for a term of one year, 18
U.S.C. § 922(g) (1), without identifying the specific offense
of which he had previously been convicted. Old Chief,
Supra at 174-75. DA refused his stipulation, & instead
introduced his prior conviction, which disclosed his being
sentenced 5 yrs. for assault. Jury found Old Chief guilty
on all counts, he appealed, that he had been unfairly
prejudiced by trial when stipulation was refused.

The high Ct. concluded, citing Fed. R. E. 403,
pursuant to which relevant evid. is properly excluded
when "probative value is substantially outweighed by the
danger of [inter alia] unfair prejudice" that naming prior
offense generally carries a risk of unfair prejudice to a
defendant creating a bad character reasoning to a juror
or jurors. Old Chief, Supra at 180, 185.

It is an abuse of discretion to admit the record
when an admission was available to prove a § 6105
charge, it is not evid. of the defendant's bad character
or propensity to commit crime.'

See dissent by Mr. Justice Bear

See Old Chief V. V.S., 319 U.S. 172, 117 S. Ct. 644, 136
L. Ed. 2d 574, 45 Fed. R.E. Serv. 835 (1997).

Petitioner was found guilty in 5 minutes upon (present case)
re deliberation. See exhibit CD. This was after his prior
was continously mentioned. in the present case. Petitioner
was acquited of homicide when his prior was not known
to the jury. Trial Ct. abused discretion by allowing D.A

17

to continuously state 3rd degree murder, & then herself joining in. Petitioner was prejudiced.

II Trial counsel was ineffective under the meaning of Strickland V. Washington, 466 U.S. 668, 694 104 S. Ct. 2052, 2068, 80 L.Ed. 2d 674 (864 F.2d 1070) (1984). For not continuously objecting & for stating petitioners prior as well. He kept the fire going with a pretend defense.

He violated Pa. Rules of Professional Conduct Client-lawyer relationship. 1.1 Competence; 1.2 Scope of Representation & Allocation of Authority Between Client & lawyer; 1.3 & 1.4.

Trial counsel prejudiced petitioner purposely & allowed U.S. Const. amend. 5 to crush petitioner, to be twice put in jeopardy of life or limb of prior 3rd degree murder charge. Petitioner was denied Due Process & stood trial for 3rd degree murder all over again (by mention of it; it was not on trial).

Dismissal should be the remedy. The finding of guilt was unfair

Petitioner would not have been found Guilty of §6105 had trial counsel advocated for his client, objected, objected, & objected.

See exhibits mm2 pg. 2 & mm8, trial counsel was never going to fight the §6105 charge anyway.

In the 3d cir., admission of "other crimes" evid. provides a ground for habeas relief (by Fed. Ct.) only if "the evidence's probative value is so conspicuously outweighed

by its inflammatory content, so as to violate a defendant's constitutional right to a fair trial. Lesko v. Owens, 881 F.2d 44, 52 (3d Cir. 1989). See F.R.E. 404(b); Pa.R.E. 404(b)(2)

Again, the jury redeliberate for a total of 5 minutes once Petitioner's prior was mentioned. It took nearly a week or (1/2) half a week for homicide acquittal when his prior was not mentioned.

The jury did not hesitate to find petitioner guilty without thought that he was not or may not be guilty once his prior by name was revealed to them erroneously. See exhibit CO.

.  Charge § 6105 Should be dismissed with prejudice.

Exhibit D last Order issued. PCRA

19

# WRIT

I. Did trial Ct. abuse discretion in failing to recognize Petitioners Habeas Corpus Writ to the State?

1. See exhibit Writ. Petitioner explained to State Ct. that the Ct. lacked subject matter jurisdiction over the petitioner, because the codified statutes (title 18) was repealed & reserved & that there was no enacting clauses. Also, that the issue could be raised at any time (case laws included).

2. In violation of Statutes:
28 U.S.C § 2241. Power to grant Writ; 28 U.S.C. § 2243 Issuance of Writ; Return; hearing; decision; 28 U.S.C. 2248. Return or answer; Conclusiveness; 28 U.S.C. 2254 State Custody; Remedies in Fed. Ct. (a)(b)(1)(ii),(d)(1)(2).

See also the U.S Const. art.1 §9, & it states: "the privilege of the writ of habeas corpus shall not be suspended, unless when in the case of rebellion or invasion."
There was no rebellion or invasion before nor after April 8, 2015 (sentencing date).

Art. 1 §20 of the Pa. Const. states: there is a right to petition. Art. 1 § 9 of the Pa. Const. states: the accused has the right to be heard, that he can demand the nature & cause of the accusation against him, & to be confronted with the witnesses against him.

Trial Ct. abused discretion by ignoring the Writ. See exhibit MO.

3. Trial counsel was ineffective for not defending petitioner's right to Writ, & for not reminding the trial ct. to remember that Const. right to petition, the right to challenge the ct.'s jurisdiction, & to have them prove that the detention was legally conducted.

Had trial counsel shown for petitioner or retired when asked by petitioner (see self-representation issue), this issue would have been proven, petitioner would have been exonerated of current charges holding him, & the trial ct. & trial counsel would not have been in violation of the U.S. Const., which is the highest law of the land. See sec. 4 art. 6. Any thing contrary to the Const. is notwithstanding. Trial counsel should have known so. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed. 2d 674 (1984).

4. The law creates ct.'s & defines their powers. Consent doesn't authorize a judge to do what the law has not given him the power to do.

It is everywhere held that jurisdiction over subject matter or cause of action cannot be conferred upon a ct. by consent or waiver, but may be questioned at any stage of the proceedings. Harris v. State, 82 A.2d 387, 389, 46 Del. 111 (1950).

Based upon this lack, it cannot be waived & may be asserted at any time. Accordingly, appellants may raise the issue of jurisdiction over the matter for the first time on appeal although they initially failed to raise the issue before the trial ct. Matter of Green, 313 S.E. 2d 193, 195 (N.C. App. 1984).

A person may not be punished for a crime without a formal & sufficient accusation even if he voluntarily submits to the jurisdiction of the Ct. Albrecht v. U.S., 273 U.S. 1, 8, 47 S.Ct. 250, 71 L.Ed. 505 (1927).

Duly noted that the requirement of a charging document (complaint, information, etc.) directly affects the subject matter jurisdiction of the Ct., & renders all proceedings prior to filing of a proper charging document void ab initio. See 22 Corpus Juris Secundum, "Criminal Law", § 324, p. 390.

In the Com. of Pa., the Criminal Information is the specific charging document that informs Defendants of the charges they must face at trial. The Crim. Info. is also the charging document that brings the Ct. subject matter jurisdiction. However, the mere existence & presentment of a crim. Info. alone is not enough to give a Ct. subject matter jurisdiction if such Crim. Info. is defective or invalid on its face, for example, if the Crim. Info. is not constructed in the particular mode or form prescribed by constitution or statute, the Crim. Info. can be invalid. See 42 Corpus Juris Secundum, Indictments & Informations, § 1, p. 833

All laws must possess an enacting clause to be valid. See Sec. 3. Style & Position of Enacting Clause. — All laws shall begin in the following style: "The General Assembly of the Commonwealth of the Pa. hereby enacts as follows.":

Such enacting clause shall be placed immediately after the table of contents of the law, or if there be no table of contents, then immediately after the title.

See Sec. 3 of the Statutory Construction Act of 1937, May 28, P.L. 1019, No. 282.

22

§ 1101. Enacting clause & unofficial provisions
    (a) All Statutes shall begin in the following
style: "The General Assembly of the Commonwealth
of Pennsylvania hereby enacts as follows:" Such
enacting clause shall be placed immediately after the
preamble or the table of contents of the statute, or
if there be neither preamble nor table of contents, then
immediately after the title.

        See § 1101 of the Act of 1972, Dec. 6, P.L. 1339,
No. 290
        In the present case, Petitioner was not charged
with a valid crime due to lack of enacting clause.
        Any other law disputing this has not been
promulgated. See exhibit Info. (I)
    Reversal required by Dismissal with
prejudice.
        Exhibit D last Order issued.

23

# BRADY

I. Whether there was Brady violation at trial that went ignored, & that both the Super. Ct. & PCRA Ct. erroneously dismissed?

1. Evid. not disclosed by the Com. itself cannot be admissible in a trial. See Brady v. Maryland, 373 U.S. 83, S.Ct. 1194, 10 L.Ed. 2d 215 (1963).

In the present case, trial counsel addressed the Ct. about Bruce Gibbs' cellphone no. being blacked out when submitted to Petitioner (discovery). See N.t. 12/3/14 pg. 256 (3-9); See N.T. 12/3/14 pg.s 251-260. Bruce Gibbs was not in his flesh at any proceeding nor known to the defense that he would be a witness & was sustained as inadmissible evidence (objection). However, petitioner again was surprised when trial Ct. reallowed Mr. Bruce Gibbs by way of text messages to testify from his grave after being ruled out. See N.T. 12/4/14 pg.s 6 (17-25)- 14. See also N.T. 12/5/14 Pg.s 94-112 (2-5). Bruce Gibbs nicknamed Drizz, Appellants cousin was again brought up to the jurors with other civilians by way of texts. There wasn't even any statements by the civilians of the text's except Mr. Bruce Gibbs was deceased, & the statement no matter what is still not valid because there was no way of getting evid. or words from a dead man.

See Pretrial Disclosures (A) required by Fed. R.E. 26 (a)(1) & (2). Evid. presented at a trial, a party must provide (i) name & address & telephone number

24

of each witness expected to be used at trial (ii) the designation of those witnesses, & (iii) identification of documents & exhibits, including summaries of the evid. — seperately identifying those items the party expects to use or offer in the trial.

Trial counsel told trial Ct. that the evid. being supplied was not provided to the defense, the text's & location sites for the cell number 267-290-0026. See 12/4/14 t.t. pgs 6-14 (2-14)

Both the Fed. rule & the ABA Standards require disclosure of the results of scientific tests. Vol. 1 Chapter 7 Discovery § 7.06 What the defense may discover [E] Scientific Tests & examinations. Fed. R. Crim. P. 16 (a)(1)(G); Fed. R. Crim. P. 16 (a)(1) & (F); ABA Standards, Note 64, Supra, at Standards 11-2.1 (a)(1v).

An expert was not disclosed to the defense (Agent Shute), nor any expert reports exchanged or exhibits, lists of provided said cellphone witnesses used at trial. Only listed witnesses can be used at a trial as evid. There needs to be a scheduled conference for exhibits & evid. to be admissible at a trial.

Well established Fed. law: Brady & its progeny: Prosecution has a clear & unconditional duty to disclose all material, exculpatory evid. Brady, 373 U.S. at 87. This duty exist whether or not the defence reavests exculpatory evid. See, e.g., Bagley, 473 U.S. at 681-2; Giglio v. U.S., 405 U.S. 150,

154 - 55 (1972) (applying Brady to impeachment evid.).

Three components of Brady violation: Evid. at issue must be favorable to the accused, because either it is exculpatory, or impeaching evid. that has been suppressed by the State, either willfully or inadvertently; & prejudice must have ensued. Bayett, 246 F.3d at 89 (quoting Strickler v. Green, 527 U.S. 263, 281-82 (1999).

In the present case, all of the components are met. The evid. at issue was favorable to Petitioner, the evid. was both exculpatory & impeaching & that is why the State suppressed it either willfully & inadvertently; & it prejudiced petitioner.

Trial counsel knew that T-mobile did not generate the text's & location sites. see 12/4/14 t.t. pg.s 7 (18-25) & 8 (2-10).

Had he submitted exhibit FC pg.s 1 & 2, it would have impeached 12/4/14 t.t. pg.s 21-25, T-mobile official Mr. Joseph Sierra as stated by Det. Verrecchio as having compiled the info & sent it to him. Det. verrecchio was under oath. The evidence was in our possession to impeach. Trial counsel was ineffective for not doing so, it was exonerating & the jury had the right to know so that the evid. could be weighed fairly & with out doubt & the outcome would have differed. See Strickland v. Washington, 466 U.S. 668, 694 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (864 F.2d 1070) (1984).

The prosecution hid the fact that det. Nordo was an accused rogue P/O, who was not to be called as a witness (which is why the prosecution did not call that witness against Petitioner), who the Phila. Police Dept. ended up charging him anyway for misconducts, & still used this officer against petitioner. He is exculpatory & material to the case.

Det. Nordo participated in the finding of purported cellphone owned by T-Mobile. See exhibit SW & AG1. He interviewed Mr. Buford. See cross-exam. issue pg. 2 lastline until pg. 3 top para-graph.

See exhibits PN, PN II & PN III. This hidden evid. would have persuaded the jury towards petitioner's innocence, had they known det. Nordo was involved in tampering with witnesses & evidences like witness Mr. Buford alleged, petitioner would have been exonerated of charges, because (1) Det. Nordo initiated petitioners arrest; (2) He is an unreliable witness who's credibility is questionable; (3) evid. against petitioner is impeachable after his cellphone contact from the search & find; & (4) his involvement is followed by constitutional violations (multiple); & also Det. Nordo's own Employers are indicting him for found misconducts after firing him. See exhibit D.

27

# INEFFECTIVE ASSISTANCE OF TRIAL
## COUNSEL

I. Whether trial COUNSEL SABATOGED Petitioner's trial, & prejudiced appellant, & does trial counsel's letters prove 6th amend. violation?

1. See exhibits mm & mm1, see mm3 2nd paragraph 1st page. about cash fees. Trial counsel abrogated his obligation to his client because of personal animosity so that appellant was deprived a fair trial, & such exhibits (actions) supports this 6th Amend. of the U.S. Const. claim of ineffective assistance of counsel.

Trial counsel expressed extreme dislike/hate toward petitioner & warns trial ct. & D.A. against his own client about their mistake of failure to give petitioner his post-sentence & appellate rights. Trial counsel meant to sabotage any good defense for appellant & to pad-lock the time in that was delivered him. In stead he chose not to object.

Trial counsel pretended that he secured alibi for trial & did not. See exhibits mm4 & mm6. Appellant was being played with. See 12/9/14 t.t. pg. 141 (5-22). Trial counsel pretended accident.

See exhibit mm7 where trial counsel pretended to have both cellphone & ballistics experts for trial & did not. This prejudiced petitioner.

Had he done so, petitioner would have had an expert explain that the phone was not petitioners (see cross-exam. issue) & that the firearms did not belong to petitioner by way of prints, D.N.A., serial number, etc.

Trial counsel told petitioner in the holding tank at Ct. "that black people where petitioner lived are usually guilty, be honest, did you do it.?" Thus, counsel labored under a conflicted interest.

Trial counsel violated Pa. Rules of Proffessional conduct. See 1.2(a), 1.2 comment, 1.2(b) &.(c); Rule 1.1; 1.3; Code of Prof. Resp. Comparison DR7-101 (A)(3); Canon 7; DR6-101(A)(3); Disciplinary Rules 7-101(A)(1)(2)(3); Pa. Rules of Prof. Conduct. 3.3 & 98.

The conviction cannot be deemed reliable due to trial counsel's proven efforts to cause petitioner's loss / prejudice. His disliking & hate of petitioner as well.

The PCRA Ct. overlooked petitioners issues with it's dismissal.

Trial counsel failed to object to trial Ct. helping the Com. get evid. in no matter what despite sustained objection. See 12/3/14 t.t. pg.s 252-260.

Trial Ct. tells D.A. to lie & say det. was lead det. when he was not. Det. Burns was & not det. Verrecchio. per se lines 4-25 of 259(page) - 260(page), & instructed the A.D.A. on how to sneak around the sustained objection the defense raised.

Trial Ct. violated judicial Code Rules 2.2(B) C(sec. & 2 sec.) Impartiality & fairness; Rule 2.11 (A) Disqualification; Canon 3; U.S. Const. Amend. VI (Impartial dist.) & U.S. Const. Amend. 14 due process & equal protection. Appellant was prejudiced by an unfair trial under the meaning of 80 LED 2D 674, 466 US 668 Strickland v. Washington.

Trial Counsel missed purposely several opportunities to object to never ending foul plays on petitioner.

29

Had trial counsel advocated petitioner & functioned the way one is gauranteed to be defended by the 6th Amend., so as to provide reasonably effective assistance, Petitioner's outcome would have been different.

Trial counsels errors were so serious that petitioner was deprived a fair trial because of reasonable probability that, but for counsel's unprofessional errors, again, the results would have been different.

Petitioner would not have been found guilty of agg. assault, §6105 or §6108.

For errors severe as these the U.S. S. Ct. will reverse. See in opinion by O'connor, J. expressing the views of Burger, Ch. J., & white, Blackmun, Dowell, Rehnquist, & Steven, JJ. in 80 LED 2D 674, 466 US 668. Strickland v. Washington in his Habeas Corpus.

Reversal justifies the crime.

Exhibit D last Order issued. PCR A Ct.

30

## ANDERS BRIEF

I. Whether appeal counsel was ineffective for not filing an appeal for Petitioner, & overlooking said issues put forth?

1. Appeal counsel filed an Anders Brief on 3/5/17 to the Super. Ct. It was upheld by denial March 28, 2018.

Petitioner then filed in opposition to Anders Brief 5/5/17. It was denied March 28, 2018.

Dist. Ct. of Appeals had appointed counsel to conduct First Appeal to that Ct. from an indigent's conviction, counsel informed the Ct. by letter that after a study of the record & consultation with the accused, he had concluded that there was no merit to the appeal. The state went with what the indigent's court-appointed attorney had previously concluded. 6 yrs. later the S. Ct. of Cali. also denied indigent-petitioner without opinion in a habeas corpus. On certiorari, the Supreme Court of the United States reversed. 18 LED 2D 493, 386 US 738 Anders v. California.

Opinion by Clark, J., expressing the views of 6 members of the Ct., it was held that the constitutional right to counsel requires that on an indigent's first appeal from his conviction, court-appointed counsel support the appeal to the best of his ability, requesting withdrawal only if the case is wholly frivolous, & must file a briefing referring to anything in the record that might arguably support the appeal.

31

See Accused's right to counsel under the Federal Constitution. 93 Led 137, 2 Led 2d 1644, 9 Led 2d 1260. Annotation References.

See Anders HN'S 4 ( The 6th Amendments requirement that "the accused shall enjoy the right... to have the assistance of counsel for his defence" is made obligatory on the states by the 14th Amend.); HN'S 6 ( The constitutional requirement of substantial equality & fair process requiring appointment of counsel for indigent criminal defendants can only be attained where counsel acts in the role of active advocate in behalf of his clients, as opposed to that of amicus curiae).

In the present case, PCRA Ct. dismissed this issue. See exhibits TM8 & TM5 where petitioner begs appeal counsel to communicate with him, lists issues to be critiqued by appeal counsel to the Super. Ct., & where appeal counsel is told by trial Ct. to effectively represent his client due to petitioner's letter to the judge who appointed appeal counsel.

I listed Pa. Const. Art. S 89, direct appeal is a right. Case law was included Halley; Lantzy.

Appeal counsel's own admission 2/5/16 (PCRA) is his not filing a requested appeal by petitioner, & concurrs with his own ineffectiveness. See exhibit TM2 order.

Appeal counsel after clear understanding that he should have filed an appeal submits an Anders brief & the Super. Ct. allows it & abuse discretion in doing so.

See exhibit TM 4-1-16 where appeal counsel

32

claims that he never recieved appointment letter. How, when he already admitted to ineffectiveness 2/5/16 (PCRA)? 4-16-15 he was Ct. ordered to represent me.

furthermore, his 6-1-15 exhibit TM3 letter is him introducing himself to appellant as appeal counsel, & promises he after being filed on petitioners behalf, will gather transcripts, conduct legal research, & would develope issues for the appeal.

See exhibit TM4 4/10/15 Appeal counsel made his entry appearance. Also exhibit TM3 nullifies exhibit TM. See exhibit TM2 also.

Because of exhibits TM5 & TM8 appeal counsel deliberately avoided filing appeal or because of exhibits mm & mm1, contact with prior trial counsel,

In 83 LEO2D 821, 469 US 387 EVITTS V. LUCEY, 469 US 387, 83 L Ed 2d 821, 105 S. Ct. 830 [No. 83-1378, Argued Oct. 10, 1984. Decided Jan. 21, 1985. Decision – Effective assistance of counsel on first appeal as of right held guaranteed by due Process clause of the 14th Amend.

In the present case, Appeal counsel faked that petitioner had no merit. See cross-examination issue, ineffective assistance of trial counsel, stipulation, self-representation, Writ, Suppression, Brady, etc.

All addressed at trial. Appeal counsel's performance was deficient, it prejudiced petitioner to where under counsel there was no counsel, & caused judgment to be affirmed without a testing.

Reversal & vacatur should be the remedy.

PCRA Ct. & Super. Ct. has addressed.

PCRA Ct. last issued an Order.

33



03/04/2009

Exhibit
picture

FILED

NOV 1 2 2019

CP Criminal Listings
PCRA Unit

## IN THE COURT OF COMMON PLEAS
### FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### CRIMINAL TRIAL DIVISION

COMMONWEALTH                    :           CP-51-CR-0004779-2013
                                            CP-51-CR-0004781-2013

                                :

        v.                      :

                                :

AMIN GIBBS                      :

## ORDER

AND NOW, this ___12th___ day of ___November___, 2019, pursuant to the Post

Conviction Relief Act, it is hereby **ORDERED AND DECREED** that following an

independent review of Defendant's Pro Se PCRA Petition, Commonwealth's Answer, 907

Notice having been sent and after review of Defendant's reply to 907 Notice, Petitioner's Post

Conviction Relief Act Petition is **DISMISSED,** based upon Lack of Merit.  Appeals must be

filed within thirty (30) days of the entry of this order at: Appellate Division, 206 The Justice

Juanita Kidd Stout Center for Criminal Justice, 1301 Filbert Street, Philadelphia, PA  19107.

**BY THE COURT:**

_____ **J.**

Exhibit D

Commonwealth of Pennsylvania
County of Philadelphia
Continuation of Affidavit of Probable Cause for Search and Seizure Warrant
Page 3

*Exhibit PC 3*

WARRANT #170526
DC#12-16-048437

On Friday, 11-23-2012, Amin Gibbs was arrested inside ▮▮▮▮▮▮▮▮▮▮. on a parole violation. A search warrant was obtained and executed at this location. Recovered during the search was a cellular phone with number 267-290-0026 that was contained in a blue rubber case.

Based upon the above facts and circumstances, the affiant believes there is probable cause to search T-Mobile for subscriber information, call detail records WITH cell-site locations, any and all text message data, ALL as they apply to cellular phone number 267-290-0026 during the period of 9-1-2012 through 11-23-2012.

Please respond by emailing results to:

# JOHN.VERRECCHIO@PHILA.GOV

Signature of Affiant _____   Badge __609__   Division/Unit __HOMICIDE__

Sworn to (or Affirmed) and subscribed before me this __30th__

Day of ___November___ , 20/12

Signature of Issuing Authority _____   (SEAL)

Commonwealth of Pennsylvania
County of Philadelphia
Continuation of Affidavit of Probable Cause for Search and Seizure Warrant
Page 3

## WARRANT #169842
### DC#12-16-048437

On 11-21-12, An additional witness was interviewed by Homicide Detectives and related the following information in summary: On 11-17-12 in the early morning hours, he heard a series of gunshots. A short time later, he received a telephone call from female who told him that Zykia Sanders had been shot and killed. He later heard people saying Amin Gibbs was the person who shot Zykia, but that she was not the intended target. He added that 3-4 weeks ago, he saw Amin in possession of two (2) handguns and that he used the guns to shoot at one of the witnesses present during the murder of Zakia Sanders. The witness stated the prior shooting was because of an ongoing "beef" Amin Gibbs and the male were having. This witness went on to identified a photo of Amin Gibbs ppn #783174 as the person he was referring to in his interview.

On 11-22-12, an additional witness known to the Commonwealth was interviewed by Homicide Detectives and related the following information in summary: On 11-17-12, he was present when Zykia Sanders was shot and killed. He specifically stated that while he was there with a group of friends, somebody started shooting at them. He and his friends started running and he saw Zykia fall to the ground. After the shooting stopped, he looked back where the shooter was and saw a B/M that he knows as "Meen" getting into the rear passenger seat of a Chevy Impala. He added that "Meen" appeared to be concealing a gun as he was getting back into the vehicle. He identified "Meen" as Amin Gibbs PPN-783174, and identified others present at the time of the shooting.

On Tuesday, 11/20/12 , an arrest warrant was lodged against Amin Gibbs –ppn#783174 for Parole violations from a prior conviction for Murder. Amin Gibbs PP#783174 was placed into the National Police wanted system as a fugitive.

On Friday, 11/23/12, at approximately 7:15 pm , 12th District Police did take Amin Gibbs into custody inside ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ after acting on information received that he was hiding there. This location is the residence of Amin Gibb's girlfriend Rasheeda Malone. Ms. Malone was debriefed for intelligence purposes by Homicide Detectives and Ms. Malone stated that Amin has been staying with her at ▮▮▮▮▮▮▮▮▮▮▮ since August of 2012. Ms. Malone was asked if she would give consent to search her residence and Ms. Malone did give Detectives signed authorization to search her residence.

The affiant believes that probable cause therefore does exist to search this residence located at ▮▮▮▮▮▮▮▮▮▮▮ in an effort to recover any firearms, ammunition, cell phones or any additional items deemed to have evidentiary value related not only to this Homicide of Zakia Sanders but also to remove any fatal firearms from the streets of Philadelphia.

---

Signature of Affiant _____   Badge #804   _____ HOM.C.2

Division/Unit

Sworn to (or Affirmed) and subscribed before me this _____ 23rd _____

Day of _____ November _____ , 20 12 .

Signature of Issuing Authority _____      (SEAL)

Exhibit SW



# Commonwealth of Pennsylvania } ss:

## CITY AND COUNTY OF PHILADELPHIA

# SEARCH WARRANT
AND AFFIDAVIT

| Det. Thomas Gaul | 804 | Homicide Div. |
|---|---|---|
| (Name and Affiant) | (Badge No.) | (District/Unit) |

**WARRANT CONTROL NO.**
169852

**ISSUED TO DIST/UNIT**
Homicide Div.

**DATE OF APPLICATION**
11-23-12

being duly sworn (or affirmed) before me according to law, deposes and says that there is probable cause to believe that certain property is evidence of or the fruit of a crime or is contraband or is unlawfully possessed or is otherwise subject to seizure, and is located at particular premises or in the possession of particular person as described below.

**IDENTIFY ITEMS TO BE SEARCHED FOR AND SEIZED** *(Be as specific as possible)*

Handguns, Firearms, Ammunition or other ballistic type evidence; proof of ownership/registration of vehicles; proof of residency/occupation; dark colored hoodie type jacket; and any other items deemed to be of evident value.

**SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSONS TO BE SEARCHED** *(Street and No., Apt. No., Vehicle, Safe Deposit Box, etc.)*

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, a two-story masonry row home

**NAME OF OWNER, OCCUPANT OR POSSESSOR OF SAID PREMISES TO BE SEARCHED** *(If proper name is unknown, give alias and/or description)*

BRT:  William Rowell Trading Co.  Rowell Mgt

**VIOLATION OF** *(Describe conduct or specify statute)*
PGC 2502  Murder

**YEAR/DIST./COMPLAINT NO.**
2012-16-048437

**PROBABLE CAUSE BELIEF IS BASED ON THE FOLLOWING FACTS AND CIRCUMSTANCES** *(See special instructions below)*

Refer to Attached Page 2/3

ATTACH ADDITIONAL PAPER (2 & 3) IF NECESSARY   ☒ CHECK HERE IF ADDITIONAL PAPER IS USED

**SIGNATURE OF AFFIANT**   **BADGE NO.**   **DIST/UNIT**

Det Thomas Gaul  804  Homicide

Sworn to (or affirmed) and subscribed before me this 23rd day of November 20 12

**COURT LOCATION**
Criminal Justice Ctr B6
1301 Filbert St., Phila PA 19106

**Date Commission Expires**

| RESULT OF SEARCH | DATE AND TIME OF SEARCH 11/23/2012  9:50 AM PM | ARREST ☐ Yes ☐ No | JUDGE'S/S DISPOSITION ☐ Disc. ☒ Held for Court ☐ Hearing ☐ Committed |
|---|---|---|---|

**PROPERTY SEIZED** ☒ Yes ☐ No  *(See "Inventory below)*

① Shotgun  ② Revolver, Proof of residence
③ Assault Rifle

IF ADDITIONAL SPACE REQUIRED USE REVERSE SIDE    INVENTORY MUST APPEAR ON ALL COPIES OF THE WARRANT

I certify that the foregoing and provisions of 18 Pa. C.S. § 4904(b) that this is a true and correct listing of all items seized.

**OTHER OFFICERS PARTICIPATING IN SEARCH**
Det. Nordo #936  HO David #382?
P/O Griffing #7035

**SIGNATURE OF PERSON SEIZED PROPERTY**   **Badge No.**   880

**SIGNATURE OF WITNESS TO INVENTORY** *(Name and address)*

BOARD REPAROLE

**COMMONWEALTH OF PENNSYLVANIA**
**BOARD OF PROBATION AND PAROLE**
PBPP-257N

PBPP

# NOTICE OF CHARGES AND HEARING

| ARREST REPORT NO: 1 | DATE OF RPT. | 12/03/2012 | cgrice | 12/3/2012 2:48:13 PM | |
|---|---|---|---|---|---|

| OFFENDER NAME (Last, First, Middle Initial) | PAROLE NO. | SID NO. | INST. & NO. | |
|---|---|---|---|---|
| GIBBS, AMIN | 319BO | 230-71-01-1 | SCI - HUNTINGDON DD7148 | |

| COUNTY/STATE OF CONV. | SENTENCE | MINIMUM DATE | RELEASE DATE | MAXIMUM DATE |
|---|---|---|---|---|
| PHILADELPHIA/PA | 07Y 06M 00D 20Y 00M 00D | 11/09/2002 | 02/27/2012 | 09/29/2018 |

EFF. DATE OF DELINQ. (If applicable) 11/13/2012

PRESENT OFFENSE

3RD DEGREE MURDER

This notice is in reference to your upcoming hearing:

[X] PRELIMINARY HEARING  [X] DETENTION HEARING  [ ] PROBABLE CAUSE
[ ] VIOLATION HEARING  [ ] REVOCATION HEARING  [ ] PANEL HEARING

## CHARGES

You are charged with the following:

PP # 783174

**NEW CRIMINAL CHARGES:**

ON OR ABOUT 11/24/12, YOU WERE ARRESTED BY THE PHILADELPHIA POLICE DEPARTMENT AND CHARGED WITH THE FOLLOWING:

VUFA-FORMER CONVICT (F2)
POW (F3)

MC-51-CR-0047941-2012
DC # 12-06-058236

**TECHNICAL PAROLE VIOLATION:**

CONDITION #3A: MAINTAIN REGULAR CONTACT WITH THE PAROLE SUPERVISION STAFF BY REPORTING REGULARLY AS INSTRUCTED AND FOLLOWING ANY WRITTEN INSTRUCTIONS OF THE BOARD OR THE PAROLE SUPERVISION STAFF.

SUPPORTING EVIDENCE: YOU WERE GIVEN WRITTEN INSTRUCTIONS TO REPORT TO THE PAROLE OFFICE AT 334 E. CHELTEN AVE., EVERY 2ND TUESDAY OF EACH MONTH. YOU FAILED TO REPORT TO THE PAROLE OFFICE ON 11/13/12, OR ANYTIME THEREAFTER.

OFFENDER'S SIGNATURE: _Amin Gibbs_    DATE SIGNED: _12-3-12_

You are now being charged with the above additional violations which will be heard along with the original charges at your violation and/or revocation hearing.

| HEARING DATE AND TIME | PUBLIC DEFENDER OR PRIVATE ATTORNEY | LOCATION |
|---|---|---|
| 12/04/2012  09:00 | PHILADELPHIA COUNTY PUBLIC DEFENDER 1441 SANSOM ST. PHILADELPHIA, PA 19102 | PHILADELPHIA COUNTY PRISON CMR, 7901 STATE ROAD PHILADELPHIA, PA 19136 |

AGENT NAME/SIGNATURE/DATE      SUPERVISOR NAME/SIGNATURE/DATE      OFFICE NAME

HAILE, LONNIE      HEALEY, KELVIN  12/3/12      PHILA. D.O. NW#5

Exhibit BR



10/19/2015 03:19:48 PM

**Pennsylvania Department of Corrections**
**DC-43 Integrated Correctional Plan**

Production

| | |
|---|---|
| Inmate Name: GIBBS, AMIN | Inmate Number: DD7148 |
| Location: B-B-1004-02 | Counselor: Deskevich-Myers |
| Annual Review Date: 1/2016 | |

| Program Plan | Recommended | Recommended By | Refuses to Participate | Unsuitable for Placement |
|---|---|---|---|---|
| Violence Prevention Moderate Intensity | 10/19/2015 | Deskevich-Myers | No | No |

| Currently Enrolled In Programs | Facilitator | Start Date | End Date |
|---|---|---|---|

| Previously Enrolled In Programs | Evaluated By | Completion | Status |
|---|---|---|---|
| 12 Step Facilitation Group | Yasolsky | Completed | 08/22/2006 |
| Alcohol and Other Drug Education | Yasolsky | Completed | 07/19/2006 |
| Alcohol and Other Drug Education | Yasolsky | Failed To Complete | 04/12/2006 |
| Alcohol and Other Drug Education | Yasolsky | Failed To Complete | 11/22/2005 |
| Batterers Group | White | | 02/22/2007 |
| OutPatient | Norfolk | Completed | 04/13/2007 |
| PV Group | Mingle | Completed | 05/27/2009 |
| Thinking for a Change | Defelice | Completed | 10/30/2006 |
| Thinking for a Change | Grissinger | Completed | 10/22/2009 |
| Violence Prevention | Grissinger | Completed | 08/17/2009 |

| General Expectations | Recommended | Comment |
|---|---|---|
| Act 35 ( $30.00 ) | 10/06/2005 | Pd. 10-1-02 |
| COR | 10/06/2005 | 8-9-07 completed |
| Maintain positive work reports | 10/06/2005 | Work report not returned.  Assumed average. |
| Misconduct Free Behavior | 10/06/2005 | Received no misconducts this review period. |
| Positive Housing Reports | 10/06/2005 | Housing report not returned.  Assumed average. |
| Secure Forms of Identification | 03/27/2009 | reentry checklist initiated |
| Vocational Education | 10/06/2005 | 1/06 Requested Warehousing/Material handling |

| Optional Programs | Recommended | Recommended By | Refuses to Participate | Unsuitable for Placement |
|---|---|---|---|---|

| Currently Enrolled In Optional Programs | Facilitator | Start Date | End Date |
|---|---|---|---|

| Previously Enrolled In Optional Programs | Evaluated By | Completion | Status |
|---|---|---|---|

I understand that completing the Correctional Program Plan may increase, but not guarantee, my chance of paroling on my minimum sentence. I also understand that if I have been sentenced to a recidivism risk reduction incentive sentence, completing my Correctional Program Plan is one of many conditions for receiving a reduction of my minimum sentence.

Counselor's Signature/Date

Inmate's Signature/Date

Exhibit PDC

Page 1 of 1

*Exhibit FC*

T-Mobile USA
Law Enforcement Relations Group
4 Sylvan Way
Parsippany, New Jersey 07054
Phone (973) 292-8911
Fax (973) 292-8697

# Facsimile Cover Sheet

To: **DET VERRECCHIO**

From: **Joseph Sierra 9732928907**

Date: **Dec 11, 2012**

Pages: **2 including cover**

Fax Number:

Voice Number:

Subject: **Subpoena Response**
**2012-189664**

Message:

Simple Mobile was recently acquired by Tracfone though so please direct your request to Tracfone for both sets of records. TracFone Subpoena Compliance 8390 NW 25th Street Miami, FL 33122 1-800-820-8632 Office: 305-715-6750 Fax: 305-715-6932

File: 2012-189664

Page    1 of 2

The information contained in this facsimile transmission is privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original to us at the address listed below via regular U.S. Mail. Thank you.

Did not know this would be an issue until used at trial where trial counsel would not submit this evidence in his possession.

T-Mobile USA
Law Enforcement Relations Group
4 Sylvan Way
Parsippany, New Jersey 07054
Phone (973) 292-8911
Fax (973) 292-8697

Date    Dec 11, 2012

DET VERRECCHIO

PHILADELPHIA, PA

Dear DET VERRECCHIO

This is in response to the Search Warrant , dated Nov 29, 2012, and served upon T-Mobile USA, Inc. on Dec 11, 2012. This subpoena requests Subscriber Information for the T-Mobile subscriber associated with MSISDN: 267-290-0026.

A search of our subscriber database discloses the following information:

|  |  |
|---|---|
| Billing Account Number: | N/A |
| Billing Account Status: | N/A |
| Billing Account Name: | N/A |
| Date of Birth: | N/A |
| Social Security Number: | N/A |
| Company Name: | N/A |
| Address: | N/A |
| Telephone 1: | N/A |
| Telephone 2: | N/A |
| IMSI: | N/A |
| Mobile Number: | 267-290-0026 |
| Mobile Number Name: | N/A |
| Date Account Established: | 06/26/2010 |
| MSISDN Status: | N/A |
| Disconnect Type and Date: | N/A |
| Post Paid/Pre-Paid: | SMPL |
| Last Refill Date: | N/A |
| Ported Indicator: | N/A |

Original materials follow via US Mail.

Should you have any questions regarding this information please feel free to contact me at your convenience. My direct telephone number is: 9732928907.

Very truly yours,

Joseph Sierra
T-Mobile Law Enforcement Relations Group

File: 2012-189664

Exhibit JK#3354

P/o John Krewer #3354 P/R 269383   Case No. M12-298

Investigation Interview Record  11/23/12  815 pm  Homicide Unit.

About the Shooting death of Zykia Sanders (Questioning).

Officer Krewer and his Concurring partner P/o Saunders #5510 P/R 263826.

Krewer says: I arrived on location due to a tip that a male wanted for Homicide was hiding at 6724 Woodland Ave inside that residence. I knocked on the front door at which time a black female later Identified as Rasheeda Malone. When the female opened the : front door I heard running upstairs. I asked her who else was inside the house, at which time she stated it was her boyfriend. At that time I walked over to the bottom of the stairs and yelled up stairs to the male to come down with your hands up. The male came to the top of the Stairs and automatically recognized the male as Amin Gibbs. I instructed Mr. Gibbs to walk down the stairs and to turn around and place his hands around his back. I placed Gibbs into custody and held the property for further investigation.

Q. Officer, did you observe or remove any evidence from this residence? A. NO. Then what property is held for further investigation? IF property is held then an observance exists.

Q. Officer, other than the female and Gibbs were there any other person(s) inside the residence?

A. NO.

| INVESTIGATION INTERVIEW RECORD | CITY OF PHILADELPHIA |
|---|---|
| *CONTINUATION SHEET* | POLICE DEPARTMENT |

A. Yes.

Q. Officer, do you have any information regarding where the tip came from?
A. I believe the tip came from the Hotline.

Q. Officer, do you have any other additional information that you would like to add to your statement/interview that could assist us with this investigation?
A. No.

---

Q. P/O Saunders did you have an opportunity to review this statement/interview as well and do you concur with the above listed information?
A. Yes, that correct.

AMIN H. H GIBBS
PP#783174
8301 STATE ROAD
PHILADELPHIA, PA 19136

CP-51-CR-0004779-2013 Comm. v. Gibbs, Amin H H.
Petition for Writ of Habeas Corpus Filed



7267640751

# COMMONWEALTH OF PENNSYLVANIA
# COURT OF COMMON PLEAS

MAR 0 9 2015

**COMMONWEALTH OF PENNSYLVANIA**
**V.**
**AMIN H. H GIBBS**

**DOCKET:** CP-51-CR-0004779-2013
: CP-51-CR-0004781-2013
: NEXT COURT LISTING-
APRIL 8th 2015 (Rm. 807)

# *PETITION FOR WRIT OF HABEAS CORPUS*

## TO THE HONORABLE JUDGE LILLIAN RANSOM(ROOM 807)

THE DEFENDANT(AMIN H. H GIBBS) MOVES FOR A DISMISSAL BASED ON
THE BELOW REGARDING:

1. THE ABOVE SAID COURT IS WITHOUT JURISDICTION
2. THE CRIMINAL INFORMATION IS INVALID DUE TO THE CODIFIED
   STATUTES DEFENDANT(AMIN H. H GIBBS) IS CHARGED WITH THAT
   DOES NOT HAVE AN ENACTING CLAUSE WHICH IS REQUIRED AFTER

OR BEFORE THE NAME OF THE STATUTE PROVEN IN THE ACT OF DECEMBER 6TH,1972,P.L. 1339,# 290.

3. FACT THAT DEFENDANT FAILED TO RAISE THE ISSUE OF JURISDICTION BEFORE,DURING, OR AFTER TRIAL DOES NOT PREVENT DEFENDANT FROM LATER RAISING THE ISSUE SINCE RULE 12 (H) (3) PERMITS DEFENDANT TO RAISE ISSUE AT ANYTIME EVEN AFTER JURY VERDICT PROVEN IN TRAVIS MILLS CORP. V. SQUARE D. CO.(1975,ED PA ) 67 FRD 22, 20 FR SERV 2D 286.

4. 42 CORPUS JURIS SECUNDUM INDICTMENTS AND INFORMATIONS SECTION 1 PAGE 833 INFORMS THE SUBJECT MATTER OF A COURT IS ESTABLISHED BY THE CHARGING DOCUMENT WHICH IS SUPPOSED TO CHARGE A VIOLATION OF A VALID LAW WITHOUT WHICH THE CRIMINAL INFORMATION IS VOID THEREFORE THE JURISDICTION OF THE COURT IS DIRECTLY EFFECTED PROVEN IN 22 CORPUS JURIS SECUNDUM,CRIMINAL LAW,SECTION 390 PAGE 324.

5. THE CODIFIED STATUTES HAVE NO ENACTING CLAUSES(SEE ATTACHMENT) THEREFORE THE COURT LACKS JURISDICTION AND THE COURT IS WITHOUT POWER TO ACT ON DEFENDANT WITHOUT JURISDICTION AND DEFENDANT MOVES FOR A DISMISSAL PURSUANT TO RULE 12 (B) (1).

THE DEFENDANT  (AMIN H. H GIBBS) RESPECTFULLY REQUESTS THE ABOVE SAID MATTER BE REVIEWED, EXAMINED, AND DISMISSED WITH PREJUDICE IN CONJUNCTION WITH THE LAW BEING AS RULE(H)(3) AND 21 AMERICAN JURISPRUDENCE,2ND,CRIMINAL LAW, SECT. 339 P. 589 ALLOWS DEFENDANT (AMIN H.H GIBBS) TO RAISE ISSUE AT "ANY" STAGE OF THE PROCEEDINGS.

THIS DOCUMENT WAS PREPARED BY:

F. Michael Medway
Attorney at Law

3 Logan Square
1717 Arch Street • Suite 3640
Philadelphia, PA 19103
(215) 569-3878
Fax (215) 569-3200
fmmedway@aol.com

August 30, 2013

Amin Gibbs #783174
PICC
8301 State Road
Philadelphia, PA 19136

Re:   **Commonwealth v. Amin Gibbs**

Dear Amin:

I hope this letter finds you well.

I've received and reviewed your most recent letters. It's clear you've read your discovery and studied the preliminary hearing transcript. You point out some things that might be important to your defense. My concern with what you've pointed out is that you may be focusing on things that are not germane to the issue of whether or not you were the person who fired the shots that killed the victim.

I'd like you to explain to me why J C Buford, Frederick Tynes and Raheim Hunter identify you as the shooter? What would be the motive for these people to implicate you as opposed to anyone else in the world? Also, you can't overlook the statements of Jameel Green, Anthony Wells, Maurice Jenkins and Devoune Handy. Their statements don't identify you as the shooter, but they're corroborative of the statements of Buford, Tynes and Green in describing how the shooting occurred.

I'm concerned about the amount of evidence there is which points to you as the shooter. If Handy is to be believed, along with the other statements which reference your October confrontation with him, the Commonwealth would have little problem establishing a motive on your part for being out there shooting into the crowd. Though we may be able to create a smoke screen by implicating Antwyne Sanders and his motive for possibly wanting to shoot Ms. Sanders, I'm not sure, given the other evidence implicating you, that that will be enough to cause a jury to want to acquit you.

*[handwritten left margin: this is exactly why 10-24-12 (the shooting) just be exposed for what it, that's why the proof were the proof of the gun system, important, see]*

*[handwritten right margin: this is why my cell phone & the gun system for 10-24-12 is relevant.]*

The following are my responses to some of the issues you raise in your letter of August 27th.

1.   You mention that you want to prove that Aikeem Maxie's 2006 Chevy Impala doesn't exist. How do I prove a negative? BTW, who is "badge #609?"

*[handwritten: none of 2012 was he in a vehicle like this, owning / in possession of, anything. So proving this helps like wise. He doesn't own a vehicle / not none of 2012 especially / dets prove it since they claim to have investigated it & Lack proof there of. Trust me its very important. And #609 is Det. Verrecchio & he was sworn to his statement.]*

*[handwritten bottom left:]* Exhibit MM2

Letter to Amin Gibbs
August 30, 2013
Page 2

*Victims body chart explains proximity. It shows that the shooter is impossibly me.*

2.   You mention the victim's body chart. How does that change anything? The ME's report indicates exactly where the bullets struck the victim.

*much or In April this Same house was ran in by U.S. Marshals for Marquise Walker Walmart for murder charges. Also he's not forget the interstate + statements of P/O Krewer.*

3.   Without having to spend time educating you on the law of search and seizure, if the police see items that they believe may be important to an investigation, they have the right to hold those items until either a search warrant or a consent to search is secured.

4.   I don't understand the import of #4. The only thing I can say about the 911 system is this, if someone makes a 911 call, there should be a record. If no one did, then no record. You also talk about Bruce Gibbs saying he was texted by you. What is Bruce's motive for lying about that. Was Bruce out to get you?

*my point exactly*

*Don't know Bruce's Motive but the phone shows that he is not telling the truth, case period. He also had a drug case pending.*

5.   I've requested the Dunkin' Donuts surveillance tapes, but they've not been supplied.

You constantly refer to every piece of evidence against you as being coerced, false, suggested by others or the result of some other nefarious motive. Just so you understand, motive for the commission of a crime never has to be proved by the DA in order for them to get a conviction. Motive is not an element of any crime. To secure a conviction of you, or any defendant for that matter, the DA must prove, beyond a reasonable doubt, that a crime occurred and that the charged defendant committed the crime. That's where your focus has to be. If you did or didn't have the confrontation with Handy three weeks before this killing, that is not going to win the case for the DA or for you.

Let's focus on what we have here. A shooting occurs. A person is killed. Various people give statements about the incident. Some of those statements describe the events surrounding the shooting without identifying the shooter. Other statements also describe the events surrounding the shooting, but describe the shooter. Putting a case together is like putting together a jig-saw puzzle. One piece of the puzzle does not complete the picture. Many different, interconnected pieces are needed to complete the picture. The same applies to a criminal prosecution. Nine times out of ten, no one witness is going to be able to complete the puzzle that makes up a case and leads to a conviction. That's the situation with your case. For the DA to secure a conviction, all of these various puzzle pieces will need to fit together to complete the picture of this case.

In reality, the only thing they need are the witnesses who set the scene and identify you as the shooter. The October thing with Handy helps them set the stage for why this may have happened (i.e., motive), but, by itself, is not necessary for them to convict you. Let's say your confrontation with Handy didn't happen, that doesn't mean you didn't shoot the victim. The car is

*exhibit MM2*

Letter to Amin Gibbs
August 30, 2013
Page 3

*the car is very important & does mean that I shot the victim or not. Why? Because every discription is about the car & me in it or around it or by it & then hopping back in it. This is why Alkeem Maxie is now important to this case. He has no impala 2006 chevy. Talk to him about it please.*

important only because it shows how the shooter got to projects. But the shooter also could've walked into the projects. The presence of the car, or lack thereof, doesn't mean that you did or didn't shoot the victim.

You have to stop focusing on things that are on the margins of this case. You point out that different witnesses remember things differently. No two people see or remember the same thing the same way. Are there differences? Yes. Are they significant enough to establish that you didn't shoot this girl? I don't know. That's something that will have to be decided by a jury, if your case goes to trial.

Another problem is your alleged alibi. Rasheeda Malone spoke by telephone with my investigator on June 21, 2013, and confirmed, orally, that the statement she gave detectives was coerced and that you had been with her the night of the incident. Ever since that telephone conversation with Malone, my investigator has been unable to have any further contact with her. She's never given my investigator a formal, written statement in which confirms what she told him on the phone. Though he has reached out to her several times since they first spoke, she has never responded to or returned his calls, nor responded to letters he has sent her. Also, the investigator has spoken to your mother, who told him that she has been trying to reach out to Rasheeda, but has had no luck reaching her.

Right now, none of this is making for a very strong defense case. Of course, that said, it all could change once I receive the missing items of discovery that I've been requesting since the end of June. Those items include the ballistics report, the Crime Scene Unit Report, the file in the case of Commonwealth v. Antwyne Sanders and the surveillance video from the Dunkin' Donuts. Once I get these items, except for the video, I'll make sure you get copies.

Please read over this letter carefully. I look forward to hearing back form you. Until I do, I remain,

Very truly yours,

F. Michael Medway

FMM/mn

Exhibit MM 2 continuation

# COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

## DOCKET



**Docket Number: CP-51-CR-0004779-2013**

# CRIMINAL DOCKET

**Court Case**

Commonwealth of Pennsylvania

v.

Amin H H. Gibbs

Page 14 of 14

### ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 12/16/2014 | | Court of Common Pleas-Philadelphia County |

Full Docket Sheet Sent to Inmate

| 1 | 01/26/2015 | | Gibbs, Amin H H. |

Motion for Extraordinary Relief
   Motion To Challenge The Weight Of The Evidence

| 1 | 02/09/2015 | | Gibbs, Amin H H. |

Waiver of Counsel Filed

| 4 | 02/13/2015 | | Ransom, Lillian |

Order Granting Motion to Continue Sentencing

SENTENCING HEARING
Honorable Lillian Ransom, Presiding
Assistant District Attorney-Lorraine Donnelly, Esquire
Defense Counsel-F. Michael Medway, Esquire
Stenographer-Gail Finn      Court Clerk-Yvette White-Brown
Defendant not brought down;
Presentence and Mental Health Investigation Evaluation(s)
not yet completed; Sentencing further deferred
Next Court Date: 04/08/2015, Courtroom#307-Justice Juanita Kidd Stout Center for Criminal Justice

| 1 | 02/24/2015 | | Gibbs, Amin H H. |

Motion to Dismiss

EXhibit MO

Printed: 02/25/2015

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

## DOCKET



**Docket Number: CP-51-CR-0004779-2013**
## CRIMINAL DOCKET
### Court Case

Commonwealth of Pennsylvania

v.

Amin H H. Gibbs

Page 9 of 14

### ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 12/01/2014 | | Ransom, Lillian |

Jury Selection

JURY VOIRE DIRE AND SELECTION
Honorable Lillian Ransom, Presiding
Assistant District Attorney-Lorraine Donnelly, Esquire
Defense Counsel-F. Michael Medway, Esquire
Stenographer-William Geftman         Court Clerk-Yvette White-Brown
Oral Commonwealth Motion To Amend The Bills of Information and Complaint
to correct incident date to November 23, 2012 is Granted;
Jury Voire Dire and Selection commenced at 10:30 A.M.;
Jury Voire Dire and Selection completed at 03:41 P.M.;
Remaining prospective jurors excused
Next Court Date: 12/02/2014, Courtroom #807-Justice Juanita Kidd Stout Center for Criminal Justice

| 3 | 12/01/2014 | | Philadelphia County Court Administration |

Trial Continued

| 5 | 12/01/2014 | | Gibbs, Amin H H. |

Motion for New Counsel

| 2 | 12/02/2014 | | Philadelphia County Court Administration |

Trial Continued

Exhibit M0.1

Printed: 12/16/2014

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# F. Michael Medway
Attorney at Law

3 Logan Square
1717 Arch Street • Suite 3640
Philadelphia, PA 19103
(215) 569-3878
Fax (215) 569-3200
fmmedway@aol.com

February 19, 2014

Amin Gibbs #783174
PICC
8301 State Road
Philadelphia, PA 19136

Re:  **Commonwealth v. Amin Gibbs**

Dear Amin:

I hope this letter finds you well.

Thank you for your letter which was received today in my office. I'm not sure when you sent it, as there is no post mark on the envelope, but some of the enclosed pages bear a date of January 21, 2014.

I have tried to read what you sent me, especially the parts containing what you call "legal research," but I've found them almost impossible to read because of how small you write. Because you've written on each page in single space, with two sentences between each ruled line, reading what you sent me is blinding.

Be advised that your motions to suppress and to quash will not be filed. Before you get angry with me, I'm not filing them because there was a properly executed search warrant, number 169852, which permitted the search of 6724 Woodland Avenue. This was also the location where you were arrested. To remind you, the guns recovered were not used in the homicide in this case. Also, the "proof of residency," if it did not have the Woodland Avenue address on it, will prove nothing.

As for the suggested quash motion, just because you don't agree with the judge having held your case for trial, that doesn't mean what she did was wrong. The quash motion goes to the issue of whether there was enough evidence presented to establish what is called in Pennsylvania law, a *"prima facie"* case, meaning a case in the first instance. A preliminary hearing is not a trial. Guilt or innocence is not decided. All the prosecutor has to do to establish a prima facie case is to show two things. First, was a crime committed, and, two, is it possible the defendant was involved in the commission of the crime. At your preliminary hearing the DA did exactly that. She establish the commission of a crime, the murder of Ms. Sanders, and she established that you *might* have been involved in her killing. Your involvement or guilt does not have to be established beyond a reasonable doubt at a preliminary hearing. The fact that some witnesses were equivocal in their testimony, or might have denied saying certain things, does not change the outcome of a

**F. Michael Medway**
Attorney at Law

3 Logan Square
1717 Arch Street • Suite 3640
Philadelphia, PA 19103
(215) 569-3878
Fax (215) 569-3200
fmmedway@aol.com

November 12, 2014

Amin Gibbs #783174
PICC
8301 State Road
Philadelphia, PA 19136

Re:   **Commonwealth v. Amin Gibbs**

Amin:

I know you had to get off of the phone, so I wanted to answer your question, even if by mail.

You said to me you believe the witnesses who identify you as the shooter will come to court and say the statements they gave to the detectives were, to use your word, "bullshit." That comment then lead to your question of what I think your percentages were at trial, IF, and it's a very big IF, that happened. Certainly, IF that happened, your chances for an acquittal would improve, but, in my opinion, not by much. Even if that happened, that wouldn't guarantee you'd be acquitted, and your chances for an acquittal would still be low. I say that because the DA would still be able to examine those witnesses on the issue of whether they gave the original statements to the detectives. In doing that, the original statements would be read line by line in front of the jury while the DA questioned those witnesses. In other words, the jury would still hear the contents of the original statements. It would then be up to the jury to decide what is true, the original statements or the witnesses' courtroom testimony.

Of course, now if the witnesses don't, as you put it, "tell the truth," I believe your chances for being acquitted are very, very, slim. I know we have Rasheda, and I know I can bring up Antwyne Sanders' alleged motive for wanting Zakia dead, but that doesn't mean the jury is going to believe that testimony and acquit you.

Now this is the point were I'd suggest to my client that he or she permit me to speak to the DA about a guilty plea offer, because, as you well know, "numbers are always better than letters," but I know you don't want me to do that, so I'm not going to mention it.

I hope the above answers your question about your chances. The answers I gave you are truthful and honest, and designed to give you the best assessment of your situation I can.

If you wish, please contact me when you can. Until I hear back from you, I remain,

Very truly yours,

F. Michael Medway

FMM/mn

# COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

## DOCKET



**Docket Number: CP-51-CR-0004779-2013**

**CRIMINAL DOCKET**

Court Case

Commonwealth of Pennsylvania

v.

Amin H H. Gibbs

Page 13 of 14

### ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 3 | 12/11/2014 | | Ransom, Lillian |

Jury Trial Held

JURY TRIAL
Honorable Lillian Ransom, Presiding
Assistant District Attorney-Lorraine Donnelly, Esquire
Defense Counsel-F. Michael Medway, Esquire
Stenographer-William Geftman      Court Clerk-Yvette White-Brown
Formal Arraignment Bifurcated from December ,2014
as to Possession of Prohibited Firearm(6105)F2 Only;
Preliminary instructions given by the Court;
Defendant formally arraigned as to
Possession of Prohibited Firearm(6105)F2 Only
and wishes to be tried by a Jury as to this charge;
Commonwealth incorporates all relevant TRIAL testimony
on (CP51CR0004781-2013 and (CP51CR0004782-2013);
Commonwealth enters stipulation(s) and rests;
Defense rests
Closing speeches given by Defense and Commonwealth;
Jury charge given by the Court at03:05 P.M.;
Jury retires to deliberate at03:10 P.M.;
Jury returns Verdict of GUILTY at03:15 P.M.;
Oral Defense Motion for Jury Poll is Granted;
Jury Polled and ALL agree with the Verdict;
Verdict Recorded
Presentence and Mental Health Evaluations ordered;
Same Bail; Sentencing Deferred
Next Court Date: 02/13/2015, Courtroom#807-Justice Juanita Kidd Stout Center for Criminal Justice

| 4 | 12/11/2014 | | Ransom, Lillian |

Guilty

| 5 | 12/11/2014 | | Ransom, Lillian |

Order Entering an Exhibit

Honorable Lillian Ransom, Presiding
Assistant District Attorney-Lorraine Donnelly, Esquire
Defense Counsel-F. Michael Medway, Esquire
Stenographer-William Geftman      Court Clerk-Yvette White-Brown

Exhibits/Evidence entered into the record in matter
of Commonwealth vs Amin Gibbs (JURY TRIAL).

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in18 Pa.C.S. Section 9183.

F. Michael Medway
Attorney at Law

*4/22/15*

*Amin -*
*As you can see*
*from the date on*
*the letter, I tried to*
*send this to you*
*before you went to* 015
*the state system.*
*It was just return[ed]*
*to me today.*
*FMM*

3 Logan Square
1717 Arch Street • Suite 3640
Philadelphia, PA 19103
(215) 569-3878
Fax (215) 569-3200
fmmedway@aol.com

Amin Gibbs #783174
PICC
8301 State Road
Philadelphia, PA 19136

Re:   **Commonwealth v**
      **CP-51-CR-000477**
      <u>**CP-51-CR-0004781-2013**</u>

Amin:

      I'd like to say it was a pleasure seeing you again yesterday, but my mother taught me never to tell a lie. To be honest with you, seeing or talking to you has never been a pleasant experience from the beginning of my representation of you in this case. Your problem was you never knew how to take yes for an answer. You're an impossible person with which to deal.

      About yesterday, your display in court was as bad and insulting to the Court and the victim's family as any I've ever seen in my more than 45 years as an attorney. It's been painfully evident to me that you've never in your life taken responsibility for any of your actions. And don't tell me that you were right about not being the one who killed Zakia Sanders. I rather believe it was my powers of persuasion that convinced the jury the evidence was not sufficient, beyond a reasonable doubt, to satisfy them that you killed Zakia. Remember one thing, you were found not guilty of the homicide, not innocent of the homicide. Being innocent of crime is a far different thing than being not guilty.

      Enough lecturing. I want you to know that today I'm filing two motions with the court. The first, and most important to me, is a motion to withdraw as your attorney. Quite frankly, I'm firing you as a client. I don't like you as a person or as a client, and I no longer wish to be associated with you.

      The second motion I'm filing is a post-sentence motion challenging the weight of the evidence. I'm reluctantly filing this motion at the request of Judge Ransom so that your new attorney will have time to do what he or she believes needs to be done for you post-trial and on appeal.

      Lastly, as a result of your outburst I was unable to finish advising you of your post-sentence rights. The post-sentence rights you have are as follows:

1.    Within ten (10) days of your sentencing you have the right to file a motion asking the court to reconsider the sentence that was imposed.

2.    Within ten (10) days of your sentence, you have the right to file a post-sentence motion in which you can challenge the weight of the evidence. Additionally, in that motion you may also include a motion for judgment of acquittal; a motion in arrest of judgment; a motion for new trial, and; a motion to modify sentence.

Exhibit
MM

9-10-15   MT. Mc550

# F. MICHAEL MEDWAY, ESQUIRE

3 Logan Square
1717 Arch Street
Suite 3640
Philadelphia, PA 19103
215-569-3878
Fax: 215-569-3200
fmmedway@aol.com

## FAX TRANSMITTAL COVER SHEET

**TO:**  Hon. Lillian H. Ransom      **FAX#:**  215-683-7073
        ADA Joanne Pescatore        **FAX#:**  215-686-8049

**FROM:**  F. Michael Medway, Esq.      **DATE:**  April 9, 2015

**NUMBER OF PAGES** (including cover sheet):      3

**OPERATOR:**  MN

**MESSAGE:**  Re:  <u>Commonwealth v. Amin Gibbs</u>

Dear Judge Ransom & Ms. Pescatore:

        The attached fax is a copy of a redacted letter I sent today to Amin Gibbs. I believe the content of the redacted letter speaks for itself. The reason I redacted large portions of the letter is because those portions contain what could be construed as privileged attorney/client communications, as well as personal comments from me to Mr. Gibbs. I wanted you both to have this letter only as it relates to the post-sentence and appellate rights of which I was unable to advise Mr. Gibbs on the record due to his being removed from the courtroom. I will leave it Your Honor's discretion and better judgment as to whether you believe Mr. Gibbs needs to be advised on the record of his post-sentence and appellate rights. I'm sure Your Honor and the DA's Office don't want this to be come an issue down the road. Thank you.

FMM, Esq.

---

## CONFIDENTIALITY NOTICE

THIS FAX TRANSMISSION CONTAINS INFORMATION WHICH IS CONFIDENTIAL AND/OR LEGALLY PRIVILEGED. THESE DOCUMENTS ARE INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ON THIS TRANSMISSION SHEET. IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE NOTIFY US BY TELEPHONE IMMEDIATELY SO WE CAN ARRANGE FOR THE RETURN OF THE ORIGINAL DOCUMENTS. ANY DISCLOSURE, COPYING OR DISTRIBUTION OF THIS TELECOPIER INFORMATION IS STRICTLY PROHIBITED.

*IF YOU EXPERIENCE ANY PROBLEMS RECEIVING THE INFORMATION TRANSMITTED, PLEASE CONTACT MY OFFICE AT 215-569-3878.*

Exhibit MM1

**F. Michael Medway**
Attorney at Law

3 Logan Square
1717 Arch Street • Suite 3640
Philadelphia, PA 19103
(215) 569-3878
Fax (215) 569-3200
fmmedway@aol.com

July 16, 2014

Amin Gibbs #783174
PICC
8301 State Road
Philadelphia, PA 19136

Re:     **Commonwealth v. Amin Gibbs**

Amin:

        Thanks for your phone call apologizing for the way you've been acting toward me. I'm sure that was hard for you. But then, shortly after I speak to you I get my office mail, and there was another typical "Angry Amin" letter. I just don't know what to make of you.

        I know you say you're not guilty. I believe you when you say that, but the way you approach me in your letters is getting to be too much for me. Either you lighten up, or just don't write to me any more. Look, I know you're worried and scared and frustrated, but under no circumstances does that give you the right to abuse me, whether in writing or in person. I don't get paid enough, especially in court- appointed cases to permit any defendant, regardless of their fears about their case, to do that to me.

        I've been a lawyer for more 43 years. I represented my first homicide defendant about 35 years ago. You're obviously not the first homicide defendant I've ever represented. So stop constantly giving me shit!

        You have the complete Sanders rape file. I sent it to you. Because you write to me with such anger, I have no idea about what you're talking about when you talk about the Sanders activity sheets. There are no activity sheets in the rape file, and the activity sheets in your homicide file I looked at don't contain any reference to Antwyne. What are you talking about?

        You also ask about why Sanders wasn't arrested after he gave his statement to the police, especially after he was identified by Zykia? If you look at pages 8- 9 of the 75-49 in the rape file, under the section "Actions Taken," you'll see a list of dates and activities the investigating officers engaged in before and after speaking with Antwyne. Zykia reported the assault on November 1st. Antwyne spoke to detectives on November 2nd. At that point the detectives hadn't had a chance to fully investigate Zykia's claims, but they request an arrest warrant on November 1st for Antwyne's arrest. They got the arrest warrant on November 6th. Antwyne speaks to them on November 2nd, before they had the arrest warrant. On page 8, date November 3rd there is a notation

MM3
Exhibit

Letter to Amin Gibbs
July 16, 2014
Page 2

that on that date a family member of Antwyne's contacted the assigned detective to advise them that Antwyne "checked into a rehab center and agreed to surrender." The surrender was done on November 24th. Fortunately for your defense, Antwyne wasn't arrested until after Zykia was killed. Not arresting him until November 24th allows me to argue to the jury that he's the only person who had a motive to want to kill this girl. And by the way, I know what Anthony Wells said in his statement about Antwyne. So what?

How does any of the above, except to show that Antwyne had a motive to kill Zykia, show that you were not the person to shot and kill this girl?

Just so you know, I have *wasted* well over an hour responding to your letter, going over ground we've covered many times before. That was over an hour I could have used working on your case, or on the five other homicide cases I have that are going to be tried before your case.

Look, Amin, I can't change the facts of this case, and I certainly can't change what others have said about your involvement. There are no 4th Amendment violations here. There are no 6th Amendment violations here because I've been doing everything possible to provide you with the effective representation of counsel the 6th Amendment requires. Stop taking out your frustrations on me. I'm not your whipping boy. In my opinion, you're lucky to have an attorney like me representing you. There are quite a few lawyers out there who wouldn't do half the job I've been doing for you in this case. By the way, there a few clients of mine in PICC. Seek them out. Ask them about my representation. Ask them if I do everything I can for them within the framework of their cases. I have never shortchanged a client in more than 43 years of practice, and I'm not starting with you. So stop your shit!

That's all for now.

Until I hear back from you, I remain,

Very truly yours,

F. Michael Medway

FMM/mn

Exhibit MM#3
continuation

F. Michael Medway
Attorney at Law

3 Logan Square
1717 Arch Street • Suite 3640
Philadelphia, PA 19103
(215) 569-3878
Fax (215) 569-3200
fmmedway@aol.com

September 10, 2014

Amin Gibbs #783174
PICC
8301 State Road
Philadelphia, PA 19136

Re:     **Commonwealth v. Amin Gibbs**

Amin:

I hope this letter finds you well.

I know when we spoke last week I told you I would try to come up and visit with you either Wednesday or Thursday of this week.. I also know you wanted to have your cell phone records, as well as having raised questions about the 3 shell casings found on the other side of the building.

For the following reasons, I'm going to cancel our meeting for this week:

First, I have your cell phone records. They are voluminous! Because they're so large, I'm having them mailed to you by separate cover. Because of their size, I wouldn't have been able to bring a copy to the prison for you. They're just too large.

When you get the cell phone records, which primarily cover the month of October, it would help for our discussion if you could go through them and indicate those calls you believe to be significant. As you'll read in the next paragraph, I then need to find out where the cell phone towers were when you made those calls. That will help show where you were at the time of the calls.

Second, I've spoken to a cell phone expert who is going to determine for us the cell phone tower locations of the calls you indicate are significant. As I'm sure you know, it's one thing to be on the phone on a particular date and time, but without knowing the locations of the proximate cell phone towers, it doesn't mean anything.

Third, because you keep raising the issue of the 3 shell casings found on the opposite side of the building from where the shots were coming from, I'm hiring a ballistics expert to help me determine the significance of those shell casings, if any. That's going to take some time, so I won't be able to discuss it with you until he gives me a report. The guy I'm hiring is the best ballistics expert I've ever seen.

Exhibit MM37



FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
COURT OF COMMON PLEAS
JUDICIAL CHAMBERS

LILLIAN HARRIS RANSOM
JUDGE

THE JUSTICE JUANITA KIDD STOUT CENTER
FOR CRIMINAL JUSTICE
1301 FILBERT STREET, SUITE 1218
PHILADELPHIA, PA 19107
(215) 683-7071
FAX: (215) 683-7073

October 26, 2015

Todd Michael Mosser, Esquire
1500 JFK Blvd. Suite 1723
Philadelphia, PA 19102

Re:   **Commonwealth v. Amin Gibbs,**
      **CP-51-CR- 0004781-2013**
      **CP-51-CR-0004779-2013**

Dear Mr. Mosser:

      Kindly find enclosed a letter received by your client. Please take whatever action you
deem necessary to effectively represent your client.

                              Sincerely,

                              Tianna K. Kalogerakis, Esq.
                              Law Clerk to the Hon. Lillian Harris Ransom

LHR/tkk
Cc: Amin Gibbs

exhibit TM5

To The Office of Disciplinary Counsel, , Amin Gibbs (DD7148) has
sent to you previously a copy of Mr. Medway's letter to the defendant
in violation of his sixth amendment duty to his court appointed client
& also in violation of his code of professional Responsibility.

The defendant seeks to have Mr. Mosser apply ineffectiveness
of Counsel to his appeal for the defendant for a letter's a-k. Mr. Masser
has not responded to his client in references to the pending or rather
up coming appeal.

The defendant seeks to have Mr. Mosser critique his ineff-
ectiveness claims & submit them to the Superior court.

There has been no contact between us since June 1, 2015
& that is one letter to the defendant stating that, "he is my court
appointed attorney for the up-coming appeal & that he will be gathering
information."

He has not sent to the defendant as requested his trial trans-
cripts nor discovery. He has not visited, he has not consulted with the
defendant about appeal strategies, concerns, pro's & con's, witnesses, case laws
to be used, He has not responded to any of the defendants letters, family
member's telephone calls, he has not responded to evidence of fraud
committed upon the court exhibit FC (where evidence shows that text's & location
site's are not from T-Mobile), pretended expert being sought by counsel (exhibit
MM), personal animosity letter from trial counsel to client (exhibit MM), refusal
to submit motions in claims of there being no issue when clearly there had
been several (exhibit MM).

The defendant is innocent & has been condemned Guilty. The
6th Amendment gaurantee's the defendant a meaningful defense & in the
present case that is, a cellphone expert from T-Mobile, a reaching out to
his alibi, consultation, a meeting, & a strategy & allowing the defendant
to participate in his own trial.

Phone #'s of those in attempt to reach Mr. Mosser are
Beverly Gibbs 215-668-4752 (mother) Aswead Hymid 215-726-1201
(father), 215-747-2696 Rasheedah Malone (girlfriend).

Date August 9, 2015. Attorney complained of Todd Michael Mosser,
215 567-1220 (phone) 215 864-7875 (fax)

CP-51-CR-0004779-2013
CP-51-CR-0004781-2013

Received

SEP 1 4 2015

Office of Judicial Records

PAGE 1 of 26



CP-51-CR-0004779-2013 Comm. v. Gibbs, Amin H H.
Pro Se Correspondence

7352346451

Received

DEC 28

Office of Judicial Records

Mr. Mosser,

Have you started the appeal process & what is or was the status of the sufficiency of evid. motion?

Can you tell me the appeal plan? I've sent to you what I wanted you to use & apply to the appeal.

I have many const. violations, Pa. R. Crim. P. violations & Pa. Const. violations & they are clear.

I also sent to you the T-Mobile Subpoena response showing testimony by the com. by way of T-Mobile ~~are~~ is fraudulent.

The search warrant did not describe the person or things to be seized (UFA) nor particularize the places to be searched.

If what I intend to be corrected by ineffectiveness, abusive discretion, plain error, & cumulative ~~are~~ error, it needs (all complaints) to be addressed in direct appeal Com. v. Bomar.

I do not know what you are doing because you refuse to consult with your client (me).

I was conspired against in my trial & it feels yet again the same. You have helped me none, in strategy, in understanding anything at all & I do not know what you are up to. You lack communication, advised me none once & I am frightened by your illusiveness.

Please communicate with me about the appeal, & show me the motion you've put in & tell me something, anything!

Jamir Gibbes
DD 7148

12/21/15

Exhibit
TM8

Please forward to following address

Amin Gibbs #DD7148
191 Flock Road
Indiana, PA 15701

Todd Michael Mosser
Two Penn Center, Suite 1723
Phila, PA 19102

Thank You Sincerly,
Amin Gibbs

12/21/15

**MOSSER LEGAL, PLLC**
Two Penn Center, Suite 1723
Philadelphia, PA 19102
215-567-1220 (phone)
215-864-7875 (fax)
www.mosserappeals.com
todd@mosserlegal.com

April 1, 2016

Amin Gibbs
Inmate# DD7148
SCI Pine Grove
191 Fyock Street
Indiana, PA 15701

Dear Mr. Gibbs:

I am the court appointed lawyer responsible for handling your appeal.  I had not received the appointment letter, and thus did not perfect your appeal after the post sentence motions were denied by operation of law.  I recently filed a PCRA petition, and the Commonwealth has agreed to reinstate your direct appeal rights.   Once that order is issued, I will file the notice of appeal and the case will move forward.

I am sincerely sorry for the delay.   I will send you the Rule 1925 statement when I file it.

Sincerely,

Todd M. Mosser

TMM/jv

*[handwritten note in right margin:]* but in June 2015 letter wrote ✝ said he was newly appointed Counsel in PCRA motion Said, "he sent appeal to Spund it was lost"

*[handwritten at bottom:]* Exhibit TM

**MOSSER LEGAL, PLLC**
Two Penn Center, Suite 1723
Philadelphia, PA 19102
215-567-1220 (phone)
215-864-7875 (fax)
www.mosserappeals.com
todd@mosserlegal.com

June 1, 2015

Amin Gibbs
Inmate # DD7148
SCI Graterford
Graterford, PA 19426

Dear Mr. Gibbs:

I am your court appointed lawyer for the appeal that has been filed on your behalf with the Pennsylvania Superior Court of Pennsylvania. In the coming weeks I will be gathering the transcripts from your criminal proceedings, conducting legal research, and developing the issues to be presented for the appeal. I will send you everything I file. If you need to get in touch with me, please correspond to the above listed address.

Sincerely,

Todd M. Mosser

TMM/jv

Exhibit TM3

# COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## DOCKET



**Docket Number: CP-51-CR-0004779-2013**
**CRIMINAL DOCKET**
Court Case

Commonwealth of Pennsylvania
v.
Amin H H. Gibbs

Page 17 of 18

### ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 2 | 04/08/2015 | | Court of Common Pleas - Philadelphia County |

Penalty Assessed

| 1 | 04/09/2015 | | Medway, F. Michael |

Motion to Withdraw as Counsel
Motion to Withdraw as Counsel filed on behalf of Gibbs, Amin H H..

| 2 | 04/09/2015 | | Medway, F. Michael |

Post-Sentence Motion
Post-Sentence Motion filed on behalf of Gibbs, Amin H H..

| 1 | 04/10/2015 | | Mosser, Todd Michael |

Entry of Appearance

| 1 | 04/13/2015 | | Gibbs, Amin H H. |

Receipt of Filing from Represented Defendant Not Signed by Attorney

| 1 | 04/15/2015 | | Ransom, Lillian |

Order Granting Motion to Withdraw Counsel

AND NOW, to wit, this 15th day of April, 2015, upon consideration of the attached MOTION TO WITHDRAW AS COUNSEL, it is hereby ORDERED and DECREED that F. Michael Medway, Esq., is permitted to withdraw as counsel for defendant, Amin Gibbs, in the above-captioned case. New Counsel is to be appointed forwith.

| 2 | 04/15/2015 | | Ransom, Lillian |

Attorney Relieved

| 1 | 04/20/2015 | | Gibbs, Amin H H. |

Receipt of Filing from Represented Defendant Not Signed by Attorney

Exhibit TM 4

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.



# First Judicial District of Pennsylvania
## Secure Court Summary

*Exhibit I*

---

**Gibbs, Amin H H.**
6800 Dicks AV
APT 1
Philadelphia, PA 19143
Aliases:
Amin H H. Gibbs

DOB: 07/17/1979
SID: 230-71-01-1
PID: 0783174
License:

Sex: Male
Eyes: Brown
Hair: Black
Race: Black

## Active

### Philadelphia

**CP-51-CR-0004779-2013**  Proc Status: Awaiting Pre-Trial Conference   DC No: 1206058236         OTN:N8351512
  Arrest Dt: 11/24/2012    Trial Dt:                      Legacy No:
  Def Atty: Medway, F. Michael - (CA)
  Last Action: Formal Arraignment              Last Action Date: 05/01/2013      Last Action Room: 1104
  Next Action: Pre-Trial Conference            Next Action Date: 05/22/2013      Next Action Room: 1105

| Seq No | Statute | Grade | Description | Disposition |
|--------|---------|-------|-------------|-------------|
| 1 | 18 § 6105 §§ A1 | F2 | Possession Of Firearm Prohibited | |
| 2 | 18 § 908 §§ A | M1 | Make Repairs/Sell/Etc Offens Weap | |

**CP-51-CR-0004781-2013**  Proc Status: Awaiting Pre-Trial Conference   DC No: 1216045531         OTN:N8367295
  Arrest Dt: 12/04/2012    Trial Dt:                      Legacy No:
  Def Atty: Medway, F. Michael - (CA)
  Last Action: Formal Arraignment              Last Action Date: 05/01/2013      Last Action Room: 1104
  Next Action: Pre-Trial Conference            Next Action Date: 05/22/2013      Next Action Room: 1105

| Seq No | Statute | Grade | Description | Disposition |
|--------|---------|-------|-------------|-------------|
| 1 | 18 § 2702 §§ A | F1 | Aggravated Assault | |
| 2 | 18 § 6105 §§ A1 | F2 | Possession Of Firearm Prohibited | |
| 3 | 18 § 6106 §§ A1 | F3 | Firearms Not To Be Carried W/O License | |
| 4 | 18 § 6108 | M1 | Carry Firearms Public In Phila | |
| 5 | 18 § 907 §§ A | M1 | Poss Instrument Of Crime W/Int | |
| 6 | 18 § 2701 §§ A | M2 | Simple Assault | |
| 7 | 18 § 2705 | M2 | Recklessly Endangering Another Person | |
| 99999 | 18 § 901 §§ A | | Criminal Attempt - Murder | Disposed at Lower Court |

**CP-51-CR-0004782-2013**  Proc Status: Awaiting Pre-Trial Conference   DC No: 1216048437         OTN:N8367295
  Arrest Dt: 12/04/2012    Trial Dt:                      Legacy No:
  Def Atty: Medway, F. Michael - (CA)
  Last Action: Formal Arraignment              Last Action Date: 05/01/2013      Last Action Room: 1104
  Next Action: Pre-Trial Conference            Next Action Date: 05/22/2013      Next Action Room: 1105

| Seq No | Statute | Grade | Description | Disposition |
|--------|---------|-------|-------------|-------------|
| 1 | 18 § 2502 | H1 | Murder | |
| 2 | 18 § 903 | H1 | Conspiracy | |
| 3 | 18 § 6105 §§ A1 | F2 | Possession Of Firearm Prohibited | |

---

Recent entries made in the court filing offices may not be immediately reflected on the court summary report. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Court Summary Report information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

Please note that if the offense disposition information is blank, this only means that there is not a "final disposition" recorded in the Common Pleas Criminal Court Case Management System for this offense. In such an instance, you must view the public web docket sheet of the case wherein the offense is charged in order to determine what the most up-to-date disposition information is for the offense.

# A's case in North Philly murder on shaky ground?

By Joseph A. Slobodzian
STAFF WRITER

THE MURDER case against Dante Hill started out strange: Three years after the slaying of 34-year-old Raseen Wright, Hill was arrested as he waited in a Philadelphia courtroom for his preliminary hearing on unrelated drug charges. It's still strange.

On Wednesday, Common Pleas Court Judge Steven R. Geroff agreed to the prosecutor's request to delay the start of Hill's trial until Sept. 26 to investigate defense claims that police arrested the wrong man.

Geroff's decision followed almost a day of argument Tuesday about defense attorney Michael J. Dia-

Hill

mondstein's claim that the police probe that led to Hill's 2014 arrest was full of holes and tainted by the involvement of a homicide detective who has since pleaded guilty to impeding justice.

Assistant District Attorney Alisa Shver told Geroff on Wednesday that Diamondstein "provided the commonwealth with information that I feel must be investigated."

Shver declined to elaborate after the hearing.

Diamondstein also was circumspect: "I can't go into specifics, but I believe it is significant evidence to indicate that the investigation was flawed and they have the wrong man."

Even without details of what Diamondstein told the prosecutor, Tuesday's hearing showed no shortage of problems with the case:

The original homicide detective assigned to investigate the 2011 shooting of Wright was Ron Dove. Dove, 45, was fired from

the department in November 2013, and this April pleaded guilty to helping his girlfriend flee from arrest in the slaying of her former lover.

Another veteran homicide detective who worked on the investigation, Philip Nordo, was suspended with intent to dismiss last month amid federal and local probes into how he developed relationships with witnesses and informants.

See DANTE Page 9

Exhibit PN

Exhibit PN

# NEWS | CRIME & COURTS

## DANTE
*Continued from Page 8*

The original audio recording of the "911 call" after Wright's shooting cannot be found. Also missing is paperwork involving witness interviews and cellphones purportedly seized during the investigation.

On Tuesday, Shver worked to rehabilitate the integrity of the investigation incriminating Hill with testimony by Homicide Detective Thomas Gaul, one of two detectives assigned to review the case after Dove's downfall.

Gaul called Dove's handling of the investigation "sloppy" and "lazy detective work." But Gaul said he "reaffirmed all the witnesses. ... [Dove] was not out to get Dante Hill."

What's known about the death of Raseen Wright is that the Logan man was found shot in the head and back shortly after 2 a.m. July 11, 2011, near the now-shuttered Coo's Sports Bar in the 800 block of North Broad Street. Another man, Byron Davis, 27, was wounded in the leg.

Hill was not arrested and charged with the slaying until Aug. 5, 2014, when Gaul took Hill into custody as Hill waited in Courtroom 603 of the Criminal Justice Center.

Shver said an unidentified witness had told detectives that Hill, now 28, was the gunman who killed Wright and wounded Davis.

Although Hill, of North Philadelphia, has been arrested 12

times since 2006, court records show just two convictions: a 2009 first offense for marijuana and a 2012 guilty plea to driving under the influence. Since his arrest, Hill was charged with possessing marijuana in prison. He pleaded guilty last month and is to be sentenced Oct. 18.

Problems with the prosecution's case in Wright's slaying have continued. Shver said the witness who incriminated Hill has recanted. Surveillance video from inside and outside Coo's allegedly shows Hill at the scene, although Shver acknowledges that it's blurry.

And Byron Davis, who purportedly was Hill's friend and possibly an accomplice, is now a fugitive. Davis has not been charged in Wright's slaying, Shver said.

What happens Sept. 26 is conjecture.

Shver argued that Diamondstein's allegation about Dove is irrelevant because the detective's romantic and legal problems did not happen until two years after Wright's slaying.

Geroff, however, ruled that the defense attorney may not mention Nordo's possible legal problems because the probe is ongoing and has not resulted in criminal charges.

Diamondstein told Geroff he expects the District Attorney's Office to either withdraw charges or go to trial Sept. 26.

"Mr. Hill has been in prison for three years, and this is the second time he has had to gird himself for trial," Diamondstein said. "Quite frankly, this is as triable a case as Mr. Hill could ever imagine." ■

✉ jslobodzian@phillynews.com
✆ @joeslobo



"I'm Frank Ke

## OBITUARY

# Frank Vincent, 80, was 'Sopranos' mob boss

Commonwealth of Pennsylvania
Municipal Court
County of Philadelphia
1st Judicial District



**Letter of Appointment**

Commonwealth of Pennsylvania
v.
Amin H H. Gibbs

Todd Michael Mosser
1500 John F Kennedy Blvd Ste 1723
Philadelphia, PA 19102

Appointment Date: 04/10/2015
Invoice Number: 51-2015-I000005385
State ID: 087534
Case Role: Lead Attorney

Docket No:          CP-51-CR-0004781-2013
PID:                0783174
RE: Amin H H. Gibbs - Defendant
6800 Dicks AV
APT 1
Philadelphia, PA 19143

## ORDER

Pursuant to Pa.R.Crim.P. No. 122 Judge Barbara A. McDermott has appointed you in the above captioned case.

This appointment is not transferable. If for any reason you cannot undertake representation of the above defendant, you must immediately notify in writing the Court Appointment Unit, at 1301 Filbert Street, Room 206 and new counsel will be appointed. Additional information regarding this appointment may be obtained from the Appointment Unit.

Your entry of appearance is being automatically entered pursuant to Pa.R.Crim.P. No. 120 (A)(2), and your appointment is effective from the time of appointment through final judgment and any proceedings upon direct appeal including new trials, if any, unless you are permitted to withdraw as provided in Pa.R.Crim.P. No. 120 (B).

Acceptance of this appointment constitutes certification that you maintain a principal office in Philadelphia County as required by Administrative Governing Board Directive Number 2 of 1997.

This Order authorizes the defendant to proceed in forma pauperis in the First Judicial District, and defendant may proceed in forma pauperis on appeal as provided in Pa.R.A.P. 551 et seq. As defendant's court appointed counsel, you are entitled to receive notes of testimony, in an electronic format only (via email), at no cost to you or to the defendant provided that you email a Transcript Order form (available at http://www.courts.phila.gov/forms) to Court Reporter Administration at the following email address: transcripts@courts.phila.gov.  **To ensure timely transcription of required notes of testimony, hand-delivered and mailed requests will NOT be accepted.**

In the event you are replaced by another court appointed attorney, you must provide new counsel a copy of your entire case file, including all pleadings, documents and other materials, including notes of testimony, you received during your representation of the defendant in connection with this case.

Compensation for service as court-appointed counsel, expert witnesses, and investigators shall be allowed as provided by local rules applicable to the appointment's specific Case Type. Upon filing the Counsel Fee Petitions and Payment Vouchers with the Office of Judicial Records, they will be forwarded to the Counsel Fee Unit for review and processing.

Counsel understands and agrees that pursuant to Administrative Order No. 02-2012 issued on April 3, 2012 by Administrative Governing Board of the First Judicial District, effective July 1, 2012, upon judicial approval of the amount of the counsel fee and costs to be paid, payment of the approved fee is the obligation of the City of Philadelphia and payment shall thus be issued by the City of Philadelphia directly to the court-appointed counsel.

Additional information concerning compensation and payment processing will be available on the website of the First Judicial District at: http://www.courts.phila.gov/departments/financial.services.asp and from the City of Philadelphia at (215) 988-8081.

Comments regarding Counsel Appointments
purposes of appeal

**RECEIVED**

**APR 16 2015**

**Hon. Lillian H. Ransom**

CPCMS 3542

*Exhibit TM2*

Printed: 04/16/2015 8:47:27AM



NO-SNOW MUSHING | LIFE, C1

# GIT ALONG, BIG DOGGIES

SIXERS 128, HORNETS 114 | SPORTS, D1

# COVINGTON LEADS THE THREE-POINT ASSAULT

# The Philadelphia Inquirer

*Winner of 20 Pulitzer Prizes*

**WEDNESDAY, MARCH 7, 2018** | PHILLYINQUIRER | CITY & SUBURBS | C | **$2**

NEWS AROUND THE CLOCK | philly°com

**KRASNER ANSWERS COURT ORDER**

# DA discloses officers on 'Do Not Call' list

A review found misconduct made 29 police problematic as witnesses. An additional 37 police officers had legal issues.

**By Mark Fazlollah, Craig R. McCoy, and Julie Shaw**
STAFF WRITERS

Responding to a judge's order, the Philadelphia District Attorney's Office has released a secret list of current and former police officers whom prosecutors have sought to keep off the witness stand after a review determined they had a history of lying, racial bias, or brutality.

The names of the 29 officers were included among a larger roster of 66 provided to the Philadelphia Defender Association on Monday and obtained Tuesday by the Inquirer and Daily News. The full list combined two groupings — the officers whose serious misconduct rendered them problematic as witnesses, and 37 officers who have been charged with lesser offenses or have been involved in other legal conflicts, often while off duty. Under prosecution policy, the second group can testify, but defense attorneys must be told of their legal issues.

In a detailed fact summary about each officer on the "Do Not Call" list, prosecutors said that the 29 former and current officers had engaged in a wide range of wrongdoing and had, as a result, often faced criminal charges or been found guilty by the department's internal Police Board of Inquiry. The offenses included numerous cases of lying to police investigators, filing false police reports, use of excessive force, drunken driv-

See **OFFICERS** on A2

▶ **DO NOT CALL:** Who were the 29 police officers and why couldn't they be trusted to testify? Short profiles, **A3**

**FRIGHTFUL FORECAST**

**WHITE HOUSE TURMOIL**

Exhibit PN II

## NEWS | COURTS

# Any any case, cop's alleged misdeeds causing more pain

**By Mensah M. Dean**
*STAFF WRITER*

THE Philip Nordo fallout may be mounting for the City of Philadelphia.

As the ex-homicide detective sits in jail awaiting trial on charges that for years he raped, assaulted, stalked, and intimidated male witnesses, more lawsuits have landed against him and the city.

In one filed Thursday, James Frazier says that after he rebuffed Nordo's sexual advances, the detective coerced him into signing a false confession, and he served nearly seven years of a life sentence for a 2012 double murder in which he had no role. Two weeks ago, Frazier was freed from prison after the Philadelphia District Attorney's Office said there was "insufficient credible evidence" to prove his guilt.

Frazier's suit came one day after a civil claim from another man who was released from state prison in January after serving nine years of a 15-to-30-year sentence for third-degree murder. The lawsuit by Jamal Simmons, who says Nordo and other officers coerced witnesses to make false statements implicating him in a 2009 slaying, seeks $25 million from the city.

A 20-year veteran officer with a decade as an often-prodigious homicide investigator, Nordo, 52, was fired in 2017, and prosecutors launched a grand jury inquiry into his work. But it wasn't until February that they charged him and detailed their allegations: that the detective had sexually targeted young men he encountered during the course of investigations, and intimidated them into silence.

They contend Nordo sexually



**Philip Nordo**

abused men in interrogation rooms and prison visiting rooms, and went so far as to ask prisoners about gay inmates who might soon be released and whom he might volunteer to transport.

He is being held without bail in Northampton County Prison. Through his attorney, Michael T. van der Veen, Nordo has denied the charges.

"He screams his innocence — that is our defense," van der Veen said in a telephone interview last week.

Prosecutors have not yet said how many cases could be impacted or reviewed because of Nordo's involvement. The lawsuits last week were at least the second and third to be filed. Another plaintiff, Gerald Camp, 31, who spent nearly two years jailed before a gun charge was dropped, claimed in a February lawsuit that Nordo arrested him in an attempt to sexually woo another man.

All three suits contend that the city knew of Nordo's misconduct but turned a blind eye and failed to stop him. (Mike Dunn, spokesperson for Mayor Jim Kenney, said the city would have no comment on the pending litigation.)

The paths of Frazier and Nordo crossed after the murders of Rodney Ramseur Jr., 21, and his girlfriend, Latia Jones, 21, on a drizzly night in May 2012. The couple were ambushed by a lone gunman as they sat on the front porch of Ramseur's family home in Olney.

Ramseur, who was training to be a barber, was shot eight times, including a shot to the head at close range. Jones was shot three times.

Investigators believed the killing was retaliation: The week before, Ramseur had testified about a murder he had witnessed.

While investigating the slayings Nordo met Frazier, who lived in Ramseur's neighborhood. According to Frazier's lawsuit, the detective "saw an opportunity to cultivate [Frazier] as a sexual conquest."

The lawsuit doesn't specify how or when Nordo made sexual advances toward him, but says he did, and Frazier rejected them. He claims Nordo then "threatened and intimidated" him into signing a false confession in which Frazier identified a friend as the gunman who killed the couple, himself as the getaway driver, and his half-brother as a coconspirator.

The statement was the only evidence police had against Frazier — no other suspects were ever charged — but it was enough to persuade a jury to convict him of third-degree murder. Frazier was sentenced to life without parole.

Frazier already had an appeal pending when the prosecutors began their internal review of Nordo's cases. On March 5, Common Pleas Court Judge J. Scott

*See* **DETECTIVE** Page 1

Exhibit PN 11

Case 2:20-cv-01619-PD    Document 2    Filed 03/27/20    Page 88 of 90

**James Frazier** (center), with his mother Marva Gardner and lawyer Edward Foster, was freed from a life prison sentence on April 4: Misconduct by Detective Philip Nordo was cited as the reason.

## Building up black docs

Knowing that more black doc-

DOCTORS
Continued from Page 5

DETECTIVE
Continued from Page 2

O'Keefe vacated his conviction and ordered a new trial after the Conviction Integrity Unit of the District Attorney's Office conceded he was entitled to one.

"After a complete review of available files and a CIU investigation, this office determined that Mr. Frazier's right to a fair trial was violated in several respects," said a statement from Patricia Cummings, supervisor of the unit. "The CIU review and investigation also revealed new evidence which establishes that there is insufficient credible evidence to prove Mr. Frazier committed the crimes for which he was convicted of."

On April 4, O'Keefe granted the DA's motion to withdraw the prosecution altogether, and Frazier was freed.

"James Frazier was only 18

them," said Madnere, a cardiothoracic anesthesiologist in Louisiana. That includes everything ana. [...]

when he was wrongfully arrested, tried and convicted of a crime he did not commit as a result of the misconduct of corrupt Philadelphia Police Detective Philip Nordo," said Frazier's attorneys, Matt Casey and Joshua Van Naarden of the firm Ross Feller Casey.

Van der Veen, Nordo's attorney, said the DA's Office did not notify him of its decision to free Frazier, so he is not familiar with the case's details. Still, he believes Nordo was wrongly blamed for Frazier's exoneration.

"As far as I know, my guy has never fabricated any evidence," he said. "My guy is innocent. Any allegation that he fabricated evidence is bogus."

Just how many of Nordo's cases will get reviewed is not known, said Cameron L. Kline, a spokesperson for District Attorney Larry Krasner. "We are in the process of trying to identify all the

Nordo cases that need to be reviewed," he said.

Frazier's exoneration also means that no one has been identified, caught, or punished for the murders of Ramseur and Jones — a sobering fact that Ramseur's mother can't forget.

"I'm just disgusted," Nicole Hyman said in an interview as she and her husband, Christopher Hyman, sat on the porch of their Olney home last week. "I don't have faith in the criminal justice system. Every time I hear about a teen killed, and there are no witnesses, no cameras, they can find who did it. But, my son? He didn't deserve this. He can't rest in peace because the person who did this is still out there."

☒ deann@phillynews.com
✆ 215-854-4172
f mensahdean

taking deficiency."

Numerous studies have shown that because of the way standardized tests are developed and

tiatives with conference sessions such as "First Among First Breaking Down Barriers," "Emergency Evolution and Education in Black Doctor," and "How

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Amin Gibbs

Signature: *Amin Gibbs*

Name: Amin Gibbs

Attorney No. (if applicable): _____

## PROOF OF SERVICE

I, _Amin Gibbs_, Petitioner, Pro-Se, hereby certify that I have served a true and correct copy of the foregoing document upon the person(s) indicated below via the following:

___✓___ First Class Mail, United States Postal Service


_____ Other:

United States Court of Appeals
3rd Circuit
601 Market Street
21400 US Courthouse
Phila., PA 19106


## VERIFICATION

I, _Amin Gibbs_, Petitioner, Pro-Se, understand that the statements set forth in this certification are made subject to the penalties for unsworn falsification to authority, 18 Pa. C.S.A. § 4904

Date: _3-17-20_

_____
Petitioner,
Pro-Se
Amin Gibbs
OD7148
SCI Pine Grove
191 Fyock Road
Indiana, PA 15701